## WRIGHT AND WADE *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TEXAS.

No. 766.  Submitted December 10, 1894. — Decided May 20, 1895.

On proof of the loss of the written authority issued by a marshal to a deputy marshal whom he had appointed, parol evidence is admissible to show the facts of the appointment and of the services of the deputy.

One acting as a *de facto* deputy by authority of the marshal comes within the provisions of the act of June 9, 1888, c. 382, 25 Stat. 178, " for the protection of the officials of the United States in the Indian Territory."

It is the obvious purpose of the act not only to bring within the jurisdiction of the United States those who commit crimes against certain persons therein enumerated, when engaged in the performance of their duties, but also to bring within the same jurisdiction those committing offences against such officials after they have ceased to perform their duties.

On April 7, 1894, the Grand Jury of the United States Circuit Court of the Fifth Circuit, Eastern District of Texas, presented an indictment against Sephus Wright and Thomas Wade, late of the Choctaw Nation, and of Atoka County, Indian Territory. The indictment charged that these parties on January 9, 1894, " in Atoka County, in the Choctaw Nation, in the Indian Territory, the same being annexed to and constituting a part of the said fifth circuit, and annexed to and constituting part of the Eastern District of Texas, for judicial purposes, and being within the jurisdiction of this court, did unlawfully, fraudulently, and feloniously, and with their malice aforethought," etc., " murder one Mike Peter,"

etc.; and after charging the commission of this crime in two counts, it added: "And ho, the said Mike Peter, had theretofore, to wit, on or about the 23d day of December, in the year of our Lord 1893, acted in the legal capacity of a *posse* and guard for and in behalf of a certain deputy United States marshal, for the Eastern District of Texas, to wit, William Colbert, who was then and there lawfully empowered to employ and deputize him, the said Mike.Peter, in said capacity of *posse* and guard. And the said Mike Peter had theretofore at divers and sundry times acted in said capacity of *posse* and guard appointed, and empowered to so act by certain deputy marshals in and for said district. And by virtue of his said employment in the said capacity of *posse* and guard by the officers aforesaid, and by virtue of the laws of the said United States, then and there valid and existing, he, the said Mike Peter, was then and there entitled to the protection of the laws of the said United States of America."

On May 30, 1894, the case came on for trial, when the defendants filed a plea to the jurisdiction of the court and a motion to quash the indictment. The plea to the jurisdiction was as follows:

"Now come the defendants in the above-entitled and numbered cause, and for plea herein say that this court should not further prosecute this suit, for the reason that this court has no jurisdiction over the person, life, or liberty of these defendants, and no jurisdiction to try and determine this cause, for the reason that said defendants are all by blood Chocta' Indians, living and residing in said Chocta' Nation, Indian Territory; and that said offence is said to have been committed in said Chocta' Nation, Indian Territory; and that the deceased, Mike Peter, at the time of the alleged killing, was a Chocta' Indian by blood, living and residing in said Chocta' Nation, Indian Territory. That deceased at the time of the alleged killing is not alleged in the ind. to have been Indian agent or policeman appointed under the laws of the United States, or was ever such officer, nor was he a United States deputy marshal, or had he ever acted as such, nor a *posse comitatus* guard killed while lawfully engaged in

the·execution of any of the United States processes; nor was the said Mike Peter, at the time of the alleged killing, lawfully engaged in any duty imposed upon him as agent, policeman, deputy marshal, *posse comitatus*, or guard, or was he ever at any time a United States officer, created by virtue of the laws of the United States, by reason of which this court could acquire jurisdiction over defendants."

The motion to quash was based on the following grounds:

"1st. Because said indictments fail to allege that Mike Peter, the deceased, was acting as *posse* or guard at the time of the alleged killing, or an officer of the United States government.

"2. Because said indictments fail to allege that the offence for which these defendants stand charged was committed within the sole and exclusive jurisdiction of this court."

The court declined to act upon the plea to the jurisdiction, for the reason that " it was dependent upon the facts of the case, and would be submitted to the jury as other facts to be proven and controlled by the charge of the court." Exception was reserved to this ruling. The motion to quash was overruled, and exception was also reserved.

The trial then proceeded, and William Colbert was put upon the stand and questioned as to whether he was or was not a deputy marshal. Objection was made to this question upon the ground that oral testimony was inadmissible to show whether a person was or was not a deputy marshal, and Colbert was temporarily withdrawn from the stand, and J. J. Dickerson was sworn. He testified, over objection, that he had been the marshal of the district for the preceding four years; that his commission was at Galveston, and he did not have it with him; that he had appointed Colbert as one of his deputies; that he had given him a commission as such; that he had exacted a bond from some of his deputies but not from others. Being asked if he knew whether an oath of office had been administered to Colbert as a deputy marshal, he answered that he could not say, but that Colbert had acted as a deputy for a long time, and had been his deputy up to the time that his successor to the office of marshal had quali-

fied.  The clerk of the court testified that he had been such since the establishment of the court in 1889 ; that he kept no record of the oaths administered to deputy marshals, and that none had ever been kept; that the appointment by the marshal of his deputies was placed on file, and the commission, issued by the marshal, was given to the deputy, so that he might have evidence of his appointment ; that he had looked into the proper place where Colbert's appointment should be, but could not find it.  Colbert was then recalled, and was allowed, over objection, to testify to his official position.  He said that he had been a deputy marshal under Dickerson during his whole term of office, and had been regularly appointed by him and sworn by Captain Brooks, the clerk of the District Court; that he was unable to produce the commission given him as evidence of his appointment, because he had destroyed it at the expiration of Dickerson's term ; that he was still a deputy marshal, having been reappointed by Dickerson's successor.  He also testified that Mike Peter, the deceased, had acted for him as a *posse* man and guard at different times; that on one occasion, in December, 1893, Peter had gone with him from Atoka in the Indian Country, to Paris, Texas, a distance of one hundred and twenty-six miles, as a guard over a person arrested for horse-stealing ; that, although Peters had never served as a guard in bringing any one to Paris, except on this one occasion, he was " working for him all the time in looking up offenders ; " that he, the deceased, frequently helped him as a *posse* in making arrests, although at the particular time when the killing occurred he was not acting as a *posse* or guard.  After the conclusion of the testimony the defendant requested the court to charge as follows:

" 1st.  The court instructs the jury that, as to whether or not Wm. Colbert at the time he appointed deceased as a *posse* man (if you believe he ever appointed him) was, at the time of said appointment, a duly appointed and qualified deputy marshal, is a material inquiry in this case, and unless you believe, from the evidence, that said Colbert was appointed by a United States marshal for the Eastern District of Texas, and duly commissioned and the oath of office administered to

him by any judge or justice of any state court within the same district, or by any justice of the peace having authority therein, or before any notary public duly appointed in such State, then and in that event you will find the defendants not guilty.

"2d. If the jury should believe from the evidence that the oath of office was administered to Wm. Colbert by Captain Brooks, as clerk, then, and in that event, you are instructed that the oath of office was not administered by any officer authorized to administer oaths to United States deputy marshals, and you will find the defendants not guilty.

"3d. Unless the jury should find from the evidence that Wm. Colbert was a United States deputy marshal, duly appointed, and had executed a bond as required by law, and that the same had been filed and recorded in the office of the clerk of the District or Circuit Court for the Eastern District of Texas, you will find the defendants not guilty.

"4th. The court charges the jury that unless they find from the evidence that Mike Peter was, at the time he was killed, acting as guard or *posse* man for a legally qualified deputy marshal, they will find the defendants not guilty.

"5th. Unless the jury find from the evidence that Wm. Colbert was a duly qualified United States deputy marshal at the time deceased, Mike Peter, was acting as guard or *posse* man for him, they will find the defendants not guilty.

"6th. If a reasonable doubt arises out of the evidence as to whether Wm. Colbert was a legally qualified United States deputy marshal at the time deceased acted for him as guard or *posse* man, they will find defendants not guilty."

All these requests were refused, and exceptions were duly reserved.

It was admitted on the trial that both of the defendants and the deceased were Choctaw Indians, living in the Choctaw Nation at the time of the killing. After a verdict of guilty, the defendants moved for a new trial, which motion was overruled, and the case was then brought here by error. The assignments of error are eight in number, and complain of the court's refusal to sustain the plea to the jurisdiction; of its

overruling the motion to quash; of error in permitting Dickerson and Colbert to testify to the appointment of the latter, and in allowing Colbert to testify to his acts as deputy marshal, when it did not appear by record evidence that he had been legally appointed, or that any official copy of his oath had been made; and they also aver that the court erred in refusing the requests to charge, in leaving the question of jurisdiction to the jury, and in overruling the motion for a new trial.

No appearance for plaintiffs in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

Mr. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The accused, being Choctaw Indians, and the deceased having been a member of the same tribe, the jurisdiction of the court depended upon the provisions of the act of Congress, approved June 9, 1888, which is as follows:

" That any Indian hereafter committing against the person of any Indian agent or policeman appointed under the laws of the United States, or against any Indian United States deputy marshal, *posse comitatus*, or guard, while lawfully engaged in the execution of any United States process, or lawfully engaged in any other duty imposed upon such agent, policeman, deputy marshal, *posse comitatus*, or guard by the laws of the United States, any of the following crimes, namely, murder, manslaughter, or assault with intent to murder, assault, or assault and battery, or who shall in any manner obstruct by threats or violence any person who is engaged in the service of the United States in the discharge of any of his duties as agent, policeman, or other officer aforesaid within the Indian Territory, or who shall hereafter commit either of the crimes aforesaid in said Indian Territory against any person who, at the time of the commission of said crime, or at any time pre-

vious thereto, belonged to either of the classes of officials hereinbefore named, shall be subject to the laws of the United States relating to such crimes, and shall be tried by the District Court of the United States, exercising criminal jurisdiction where such offence was committed, and shall be subject to the same penalties as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction in all such cases." Act of June 9, 1888, c. 382, 25 Stat. 178.

The averments of the indictment, if true, brought the case clearly within the jurisdiction of the court. It was no error to refuse to sustain the plea to the jurisdiction, for its correctness depended upon the alleged existence of certain facts which were not admitted. All the matters stated in the assignments of error, whether applying to the court's action on the motion to quash, or in regard to the plea to the jurisdiction, or the objections to the admissibility of evidence, and to the refusal to give the charges requested, really embrace only two points. 1st. Whether it was admissible to show by parol the appointment and service of a deputy marshal, and whether one can be considered a deputy marshal if sworn in by the clerk of the District Court. 2d. Whether under the act of Congress, above referred to, the offence of killing a *posse* man or guard, came within the jurisdiction of the United States, if the killing occurred when the deceased was not actually engaged in performing services.

Without expressing an opinion as to the necessity of issuing a regular commission to a deputy marshal, or as to the authority of the clerk of the District Court to administer the oath to such officer, it is clear that, on proof of the loss of the written authority issued by the marshal to a deputy whom he had appointed, it was permissible to offer oral evidence of the fact of appointment and of the services of the deputy. His appointment and service made him a *de facto* officer, even if the clerk who administered the oath was not empowered to do so. Acting as *de facto* deputy by the authority of the marshal, he came clearly within the provision of the statute of 1888, and is entitled to be considered as such dep-

uty for the purposes of that statute. *Norton* v. *Shelby County,* 118 U. S. 425, 445, 446; *In re Manning,* 139 U. S. 504; *Ball* v. *United States,* 140 U. S. 118, 129.

The second contention is equally unsound. The obvious purpose of the statute was not only to bring within the jurisdiction of the United States those who commit crimes against certain persons therein enumerated, when engaged in the performance of their duties, but also to bring within the same jurisdiction those committing offences against such persons after they have ceased to perform their duties. The context of the law leaves no doubt on this subject, for it clearly provides for two classes of crimes — offences committed against the persons designated when performing their duty, and like offences committed against such persons after they have ceased to perform their official duties. It says: "That any Indian hereafter committing against the person of any deputy marshal, *posse comitatus* or guard, while lawfully engaged in the execution of any United States process, or lawfully engaged in any other duty imposed upon such deputy marshal, *posse comitatus* or guard by the laws of the United States, shall," etc. Then, in providing for the other contingency, it adds: "Or who shall hereafter commit either of the crimes aforesaid in said Indian Territory against any person who, at the time of the commission of said crime or at any time previous thereto, belonged to either of the classes of officials hereinbefore named, shall be subject to the laws of the United States relating to such crimes, and shall be tried by the District Court of the United States exercising criminal jurisdiction where such offence was committed," etc. To hold that offenders who commit the designated crimes against the officers or agents named in the statute are only subject to its provisions when the crime is committed against the officer while actually engaged in performing his duty, would not only destroy the letter of the law, but frustrate its obvious purpose. That purpose was not only to secure the persons therein named, when actually engaged in the discharge of their duties, but also to protect them after their duties were performed.                                    *Judgment affirmed.*