**PRICE v. UNITED STATES.**
No. 7051.

Circuit Court of Appeals, Fifth Circuit.
Jan. 5, 1934.

W. P. McLean and Jack Binion, both of Fort Worth, Tex., for appellant.

Clyde O. Eastus, U. S. Atty., and Frank B. Potter, Asst. U. S. Atty., both of Fort Worth, Tex.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Price was indicted in two counts under Revenue Act of 1928, § 146 (26 USCA § 2146), for willfully failing to make an income tax return for the calendar year 1930, and for willfully attempting to evade payment of his income taxes for that year; each count alleging that during 1930 and at the time he should have returned and paid his taxes he had his legal residence and principal place of business in the city of Dallas and within the jurisdiction of the court. Before pleading not guilty, Price pleaded specially to the jurisdiction of the court that during 1930 and from January 1, 1931, to June 15, 1931, he was not a resident of Dallas nor did he have his principal place of business there but resided in Beeville, Bee county, Tex., in another collection district and in another federal court district, and prayed a separate trial of the issue. He also sought a bill of particulars. The bill was refused and separate trial of the issue of territorial jurisdiction was denied, the court ordering it to be tried by the jury along with the merits. The jury found Price guilty, and he appeals, assigning for error the rulings just stated, the refusal to instruct a

134

verdict of not guilty, the refusal to allow his wife to testify, and certain instructions in the charge.

█ The indictment was very full and specific and needed no enlargement by bill of particulars. The refusal of it was well within the court's discretion. No surprise developed in the trial. Dunlop v. United States, 165 U. S. at page 491, 17 S. Ct. 375, 41 L. Ed. 799; Wong Tai v. United States, 273 U. S. 77, 82, 47 S. Ct. 300, 71 L. Ed. 545.

█ Nor was there error in the disposition made of the special plea. The usual way of contesting the territorial jurisdiction of the court to try a crime under the Sixth Amendment of the Constitution is on a plea of not guilty, which puts in issue the whole case and enables the defendant to make any special defense which goes to an original absence of guilt as charged. Bishop's New Criminal Procedure, §§ 743, 799. The burden is then upon the prosecution to prove the jurisdictional allegation as to the place of the offense with the same certainty as any other on pain of failure to convict. Vernon v. United States (C. C. A.) 146 F. 121; Moran v. United States (C. C. A.) 264 F. 768. Bishop says: "It seems that the defendant cannot plead to an indictment before justices that the offense was committed at some place beyond their jurisdiction, for this would amount to no more than the general issue." New Criminal Proc. § 736. There may, however, be great convenience in the separate trial of such an issue in cases of real doubt, just as a separate trial of an issue of present insanity is had, for if the court really has no power to try the case it ought not to, and if that question is tried under the general issue and results in a verdict of not guilty, there appears to be a former jeopardy and a former acquittal which would bar a trial before the court that really had jurisdiction. Also by separately trying such an issue a very long and expensive trial of the main fact may sometimes be saved. In 12 Cyc. p. 354, the separate plea is treated as optional. A separate trial of a defensive issue was disapproved in United States v. Murdock, 284 U. S. 142, 52 S. Ct. 63, 76 L. Ed. 210. In Wright v. United States, 158 U. S. 232, 15 S. Ct. 819, 39 L. Ed. 963, the court refused to try separately a plea to the jurisdiction and ordered the issue submitted to the jury in the main trial and his action was affirmed. In the present case if a separate trial was discretionary with the court the discretion was well exercised, for the whole contest proved to be over the question of residence.

There was no other substantial defense. Price was not legally prejudiced by having one trial instead of two.

█ The evidence showed that Price had a large income in 1930 on which he owed a substantial tax, and that he had not returned the income nor paid the tax anywhere. On the point of his residence and place of business it was shown for the prosecution that he owned a home at Dallas, where he had resided with his wife and children continuously until the spring of 1930, when he took up an oil business at Beeville, Bee county, and afterwards spent part of his time there but visited Dallas and kept an office rented there and frequently throughout the year said Dallas was his home. He made an application for a corporate charter, describing himself as residing there, and made his income tax returns for 1929 and 1931 there. On April 16, 1931, he filed at Dallas a tentative tax return for 1930, sworn to by himself, in which he gave his address as 313 Thomas Building, Dallas, Dallas county, Tex. The return was otherwise blank except for the words, "Estimated no tax due." An extension of time was obtained to make a final return, but none was made. For the defense it was testified that Price left Dallas for Bee county in January, 1930, bought a residence there in the summer, and brought his wife thither, offering his Dallas home for sale but not selling it; his mother and father in law continuing to occupy it and his family visiting it at times. He sold the Bee county home early in 1931 and in the spring went to California temporarily. While at Beeville he had a business office there, and frequently declared that he had made that his permanent home. From this outline it is evident that the jury might have found either way on the question whether he had changed his permanent residence and his principal place of business from Dallas to Beeville. There was no error in leaving to them the question whether his returns and taxes were due at Dallas or elsewhere.

█ Touching the refusal of the court to permit the wife of Price to testify, all that the bill of exceptions contains is this: Defendant's counsel: "We will take Mrs. Price, the wife of the defendant." District Attorney: "The Government makes the usual objection to the incompetency of the wife of the defendant to testify." The Court: "If it is the defendant's wife and the Government objects, I sustain the objection." Defendant's counsel: "He is on trial, and she is not a competent witness, but we reserve the bill."

---

**135**

We give effect to this half-hearted exception and will consider the point. The question of competency was ruled as the court at that time was bound to rule it under Hendrix v. United States, 219 U. S. 79, 31 S. Ct. 193, 55 L. Ed. 102, and Jin Fuey Moy v. United States, 254 U. S. 190, 41 S. Ct. 98, 65 L. Ed. 214. The Supreme Court has since overruled those cases and declared that the wife is competent to testify for her husband in criminal trials in the courts of the United States. Funk v. United States, 54 S. Ct. 212, 78 L. Ed. ——, decided December 11, 1933. We hold accordingly. But the question remains whether reversible error is shown. No question was asked the witness to indicate what testimony was expected, and no offer was made to prove any particular thing by her. The judge did not know, and we do not know, what she would have said if questioned. Counsel offering her should have interviewed her, and if not intending to acquiesce in the preliminary ruling touching her competency should have made apparent in some proper way what her testimony would be. In the assignment of error he in an apparent effort to comply with our rule XI, requiring quotation of the substance of the evidence which is claimed to have been wrongly excluded, states what she would testify; but this statement can be made only from the record in the case and cannot add to it. We must disregard the statement. Victor Talking Machine Co. v. Straus (C. C. A.) 280 F. 717. Where the error alleged is that evidence has been wrongly excluded, the rule is well settled that there must have been an offer of a definite sort, so that both courts can know whether what is offered is in itself relevant and otherwise competent, and indeed whether it really exists. The absurdity of reversing the case without knowing this lies in the possibility that upon a retrial it may develop that the evidence itself was incompetent or the witness would testify adversely, or knows nothing. Northwestern Union Packet Co. v. Clough, 20 Wall. 528, 22 L. Ed. 406; Shauer v. Alterton, 151 U. S. 607, 14 S. Ct. 442, 38 L. Ed. 286; Griffin v. Henderson, 117 Ga. 382, 43 S. E. 712, by Justice Lamar when on that court. When the examination is by written deposition or the evidence consists of a document, the rule is stringent; but when oral, the questions asked to which answer was refused may make clear enough what is offered, in which case a formal statement or offer may be excused. Thompson v. Bank of Toledo, 111 U. S. 529, 4 S. Ct. 689, 28 L. Ed. 507; Florida Railroad Co. v. Smith, 21 Wall. 255, 22 L. Ed. 513; Buckstaff v. Russell &

Co., 151 U. S. 626, 14 S. Ct. 448, 38 L. Ed. 292. But here no questions were asked. We can only guess what the witness knew and would have said. Nor is the rule changed because questions are cut off by holding the witness incompetent. His competency after all is but an appendage to the truth to be told. It does not matter whether the witness is ruled competent or not unless thereby relevant testimony is excluded. If a witness offered as an expert is wrongly held by the court not to be such, we apprehend no reversible error results unless it appears in some way on what point he would testify and what he would swear. See Herencia v. Guzman, 219 U. S. 44, 31 S. Ct. 135, 55 L. Ed. 81; Clauson v. United States (C. C. A.) 60 F.(2d) 695. So if a witness called to testify to a conversation with the agent of a party to the case as containing an admission and the court on preliminary inquiry erroneously holds the agency not to be established, there would not be a reversal unless it appeared from the questions or otherwise what the substance of the conversation was. Ladd v. Missouri Coal & Min. Co. (C. C. A.) 66 F. 880. If a paper is excluded erroneously on the ground that its execution is not properly shown, the case will not be reversed if the record does not indicate at all the nature and contents of the paper. Northwestern Union Packet Co. v. Clough, 20 Wall. 528, 531, 542, 22 L. Ed. 406. Any impropriety in stating the proposed evidence in the presence of the jury may be avoided by sending the jury out. While there is authority to the contrary, we regard the rule as established in the federal courts that the erroneous decision of such a preliminary question is not reversible when the record fails altogether to show what the evidence would have been if the preliminary question had been correctly decided. Romeo v. United States (C. C. A.) 24 F.(2d) 527; Hass v. United States (C. C. A.) 31 F.(2d) 13; Maryland Casualty Co. v. Simmons (C. C. A.) 2 F.(2d) 29; Stafford v. American Surety & Trust Co., 60 App. D. C. 380, 55 F.(2d) 542; Clauson v. United States (C. C. A.) 60 F.(2d) 695; Thompson v. United States (C. C. A.) 65 F. (2d) 897. See, also, Kischman v. Scott, 166 Mo. 214, 65 S. W. 1031; Bogardus v. Salter, 127 Okl. 4, 259 P. 561; Hutchings v. Cobble, 30 Okl. 158, 120 P. 1013. We are not here dealing with cross-examination or with a decision which wrongly restricts the issues to be tried. No reversible error is shown in the exclusion of Mrs. Price as a witness.

As to the charge, the bill of exceptions states that the court said in part: "In this

136

particular case I make bold to say that testimony has been offered—what it proves is for your consideration—on both sides of these questions. Whether there is proof on both sides is for you to say, but from all this proof you will say where the truth lies with reference to his real hearth of hearths, as to where his legal residence was during the year 1930 and at the time he was required to make out his income tax return for the year 1930." At the close of the charge counsel said: "We object to the court's charge because it should limit his residence from the 1st of January, 1931, to the 15th day of June, 1931." The court replied: "All right, gentlemen." We are unable to tell from this whether the court was acquiescing in the view suggested that the material time to be considered was that from January 1 to June 15, 1931. But if not the court is not put in error by so loose a criticism directed at the whole charge. Assuming that Price's residence at the time the return and the taxes were due was the very point to be determined, his residence during 1930 was not immaterial, because when established it presumably continued until shown to be changed. The charge quoted followed the language of the indictment and of the plea to the jurisdiction, and seems really to put on the prosecution the burden of proving residence in Dallas both during 1930 and during the first part of 1931, a thing not to be complained of by Price.

Judgment affirmed.