McDOWELL v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1896.)

No. 82.

1. DISTRICT JUDGES—APPOINTMENT FOR ANOTHER DISTRICT—DE FACTO JUDGE.
    A district judge, acting in another district, in which the office of judge is vacant, by virtue of an appointment, regular on its face, made by the circuit judge, is an officer de facto; and his orders continuing the term from day to day cannot be questioned, on the ground that a circuit judge has no power to make such an appointment when the office is vacant. Decided by supreme court in answer to question certified. 16 Sup. Ct. 111.

2. SAME—RECITALS IN BILL OF EXCEPTIONS.
    The fact that, in the recital of the proceedings in the bill of exceptions, the term was wrongly spoken of as a special term, was immaterial, in the face of a statement that the regular term was open and continued from day to day until after the proceedings complained of had taken place. Decided by supreme court in answer to question certified. 16 Sup. Ct. 111.

3. MATERIALITY OF EVIDENCE — DECLARATIONS OF WIFE — IMPEACHING TESTIMONY.
    A witness who testified that he had done a particular act was asked, on cross-examination, whether at a particular time and place he had not said that he had not done it. After answering this question, he was asked if, on the same occasion, his wife had not stated that he had not done it. *Held*, that this question was properly excluded, since his failure to do the act could not be proved, as an independent fact, by the wife's declarations; and that, if the intention was to contradict the witness, or lay the foundation for impeaching his testimony, the court should have been distinctly so informed.

In Error to the District Court of the United States for the District of South Carolina.

This was an indictment against A. F. McDowell for making, as postmaster at Walker, S. C., a false return to the auditor of the post-office department for the purpose of fraudulently increasing his compensation. Defendant was convicted in the district court, and brought the cause to this court on writ of error.

Stanyarne Wilson, for plaintiff in error.

Wm. Perry Murphy, for defendant in error.

Before FULLER, Chief Justice, and GOFF, Circuit Judge.

GOFF, Circuit Judge. This case comes to us on writ of error to the district court of the United States for the district of South Carolina. After it was submitted, on consideration of the record and briefs, we were of opinion that the principal point raised was of such general importance that it was desirable to obtain the instruction of the supreme court for its proper decision, and we therefore certified to that court the two questions hereinafter set forth. On the 18th day of November, 1895, that court answered the first question propounded to it in the affirmative, and deemed it unnecessary, because of said answer, to consider the second. The case is reported in 159 U. S. 596, 16 Sup. Ct. 111, from which the following statement of it is quoted:

"The facts, as stated, are that a vacancy existed in the office of district judge of the United States for the district of South Carolina, from January 1, 1894, to February 12, 1894. The regular terms of the district court for the Western district were fixed by law to be held at Greenville on the first Mondays of February and August (Act April 26, 1890, c. 165; 26 Stat. 71), and the first Monday of February, 1894, fell on the 5th day of the month. On January 30, 1894, the following order, made by Hon. Charles H. Simonton, one of the circuit judges of the circuit, was duly filed in the clerk's office:

" 'It appearing to me, by the certificate of the clerk, under the seal of the court, this day filed, that there is such an accumulation of business and urgency for the transaction thereof in the district court for the Western district of this state, and that the public interests require the designation and appointment of a district judge within this circuit to hold the regular term of this court beginning on the first Monday of February, 1894, at Greenville, South Carolina: Now, therefore, in consideration of the premises, and on motion of the United States attorney, I do hereby designate and appoint the Honorable Augustus S. Seymour, judge of the district court of the United States for the Eastern district of North Carolina, the same being in the Fourth circuit, to hold and preside over the said term of court, and to have and to exercise, within the Western district of South Carolina, the same powers that are vested in the judge of the said district.'

"In pursuance of this order, Judge Seymour held and presided over the regular term of the district court for that district, from February 5th to February 12th, on which day Hon. William H. Brawley, appointed and duly commissioned as district judge, qualified and entered upon the discharge of his official duties, and held and presided at the term from that day until the conclusion of the proceedings in this case. On February 16th an indictment was returned into the court against A. F. McDowell, the plaintiff in error. Upon this indictment McDowell was tried February 21st and 22d, and a verdict of guilty returned. A motion for a new trial was overruled February 23d. Thereupon, and before sentence, McDowell made a motion in arrest of judgment, on the ground that the indictment had been found, and the subsequent proceedings had thereon, at what was an unlawful term of court, and that such indictment and subsequent proceedings were consequently void. This motion was overruled, and sentence pronounced upon the verdict. The making of the motion in arrest and its disposition appear in the record in a bill of exceptions, which refers to the indictment as found by 'the grand jury impaneled at the special February term of said court, at Greenville, at the district aforesaid.' And the statement of the matter upon which the motion in arrest was founded commences: 'At the opening of the special February term, 1894, of said court, that being the term at which said indictment was found,' but the record nowhere discloses the calling of any special term as such. Upon these facts the court of appeals certified these questions:

" '(1) Whether plaintiff in error was indicted, convicted, and sentenced at a lawful term of the district court for the district of South Carolina, and the Western district thereof, sitting at Greenville, as set forth in this certificate.

" '(2) Whether the question as to the validity of the indictment and the proceedings against the plaintiff in error was open to consideration on the motion in arrest of judgment.' "

Mr. Justice Brewer delivered the opinion of the court, which is as follows:

"The contentions of counsel for plaintiff in error are that the power of a circuit judge or justice to call one district judge from his own into another district does not extend to cases in which there is a vacancy in the office of judge of the latter district; that the order of the circuit judge designating and appointing Judge Seymour to hold the February term was void; that the term lapsed; that, no special term having been called, Judge Brawley was attempting to hold the district court at a time unauthorized by law; and that, therefore, all proceedings before him were coram non judice and void. This obviously presents a mere matter of statutory construction, for the power of congress to provide that one district judge may temporarily discharge the duties of that office in another district cannot be doubted. It

involves no trespass upon the executive power of appointment. There is no constitutional provision restricting the authority of a district judge to any particular territorial limits. District courts are solely the creation of statute, and the place in which a judge thereof may exercise jurisdiction is subject absolutely to the control of congress.

"At first there was no authority for the temporary transfer of one judge to another district. The judiciary act of September 24, 1789, c. 20, § 6 (1 Stat. 73, 76). simply provided that a district judge, if unable to attend at the day appointed for the holding of any term, might, by his written order, continue it to any designated time, and that in case of a vacancy all matters pending in the court should be continued as of course until the first regular term after the filling of the vacancy. Since then there has been repeated legislation, each successive statute seemingly intended to make larger provision for the regular and continued transaction of the business of the district court. Thus, in 1850 an act (9 Stat. 442; Rev. St. § 591) was passed providing that, when any district judge was prevented by any disability from holding any term, and that fact was made to appear by the certificate of the clerk under the seal of the court to the circuit judge, such judge might, if in his judgment the public interests so required, designate and appoint the judge of any other district in the circuit to hold such term, and to discharge all the judicial duties of the judge so disabled during such disability. This, it will be noticed, applied only in case of disability on the part of the regular district judge. Two years thereafter, in an act (10 Stat. 5) carried into the Revised Statutes as section 592, like authority was given to call in the judge of some other district when, as shown by the certificate of the clerk, from the accumulation or urgency of business in any district court, the public interests so required. This statute contemplated the doubling of the judicial force, and authorized both judges, the regular and the appointed judge, to act separately in the discharge of all duties. Finally, in 1871, an act was passed (16 Stat. 494; Rev. St. § 596) which reads as follows:

" 'It shall be the duty of every circuit judge, whenever in his judgment the public interest requires, to designate and appoint, in the manner and with the powers provided in section 591, the district judge of any judicial district within his circuit to hold a district or circuit court in the place or in aid of any other district judge within the same circuit; and it shall be the duty of the district judge, so designated and appointed, to hold the district or circuit (court) as aforesaid, without any other compensation than his regular salary as established by law, except in the case provided in the next section.'

"This gives full power to the circuit judge to act, without reference to any certificate from the clerk, whenever, in his judgment, the public interests require. It is contended that the words 'in the place or in aid of' limit the power of designation and appointment to those cases in which there is an existing district judge. This construction, it is claimed, finds support in section 602, Rev. St., which in substance re-enacts the latter part of section 6 of the judiciary act of 1789, to the effect that, in case of a vacancy in the office of district judge, all matters pending before the court shall be continued, of course, until the next stated term after the appointment and qualification of his successor. While 'in aid of' naturally implies some existing judge to be aided, the words 'in the place of' do not necessarily carry the same implication. Com. v. King, 8 Gray, 501. They may, without doing violence to language, be construed to mean that the designated judge is to take temporarily the place which is or had been filled by a regular judge. Section 602 throws little light on the question. It does not purport to abolish the term. The existence of a term does not depend on the fact that any business is transacted thereat, nor does any general order of continuance of itself close the term. A simple illustration will demonstrate this. Suppose, at the commencement of any regular term of this court, a general order should be entered continuing all matters to the succeeding term, no one would contend that such an order, of itself, adjourned the term, or prevented the court from adjourning from day to day until such time as it saw fit to order a final adjournment. The officers attending after the continuance of the cases and until the final order of adjournment would unquestionably receive their per diems for attendance upon a term of the court. The declaration that the

process, etc.. shall be 'continued, of course,' means, simply, 'continued without any special order,' and was obviously designed to prevent that failure of right which in many cases might otherwise result from the absence of a judge. It is familiar that process is often made returnable at a term, and notices are given of applications for orders at a term. In these and similar cases rights are created which may depend for their continued existence upon some action of the court at the term. Clearly, the statute does not destroy, or even temporarily suspend, the jurisdiction of the regular judge, when appointed, over matters pending in his court.

"But, whatever doubts may exist whether the order of designation by the circuit judge was within his power, there is another consideration which is decisive of this cause. Judge Seymour must be held to have been a judge de facto, if not a judge de jure, and his actions as such, so far as they affect third persons, are not open to question. Ball v. U. S., 140 U. S. 118, 129, 11 Sup. Ct. 761; Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121; Hunter's Adm'r v. Ferguson's Adm'r, 13 Kan. 462. The time and place of a regular term of the district court were fixed by law at Greenville, on the first Monday of February. Judge Seymour was a judge of the United States district court, having all the powers attached to such office. He appeared at the time and place fixed by law for the regular term, and actually held that term. The circuit judge had, generally speaking, the power of designating the judge of some other district to do the work of the district judge in this district. The order of designation was regular in form, and there was nothing on its face to suggest that there was any vacancy in the office of district judge for the district of South Carolina. Any defect in the order, if defect there was, is shown only by matters dehors the record. While this may not be conclusive, it strongly sustains the contention of the government that Judge Seymour was, while holding that term, at least a judge de facto. Whatever doubt there may be as to the power of designation attaching in this particular emergency, the fact is that Judge Seymour was acting by virtue of an appointment, regular on its face; and the rule is well settled that, where there is an office to be filled, and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer de facto, and binding upon the public. Of course, if he was judge de facto, his orders for the continuance of the term from day to day until February 12th, when the regular judge took his place upon the bench, were orders which cannot be questioned, and the term was kept alive by such orders until Judge Brawley arrived. The record shows that the indictment was not found until after the latter was on the bench. Whether the grand jury was in fact impaneled or not before Judge Brawley took his seat, does not appear from the record. While Rev. St. § 817, provides that, ordinarily, jurors shall for this district be drawn at a preceding term, yet such provision does not conflict with the power granted in section 810 to all circuit and district courts, as follows: 'And either of the said courts may in term order a grand jury to be summoned at such time, and to serve such time as it may direct, whenever, in its judgment, it may be proper to do so.' Under this provision the judge may at any term, regular or special, and at any time in the term, summon a grand jury.

"Indeed, we may assume that all the proceedings in respect to this case were held before the regular judge of that court, and that the only orders which Judge Seymour made bearing upon this case were the daily orders of continuance of the court and the keeping alive of the term from February 5th to February 12th, and these were orders made by a de facto judge of that court, and are, as we have stated, not open to challenge. The fact that, in the recital of the proceedings, the term is spoken of as a 'special term,' is immaterial, in the face of the statement that the regular term was opened on February 5th and continued from day to day until after the proceedings complained of had taken place. It follows, from these considerations, that the first question certified to this court must be answered in the affirmative. In view of this answer, it is unnecessary to consider the second question."

A certificate to that effect was thereupon sent down to this court.

This conclusion of the supreme court disposes of the questions, arising on the assignments of error, relating to the legality and regularity of the proceedings, under which the plaintiff in error was indicted and convicted, and finds that the court below did not err in overruling the motion in arrest of judgment. While a number of exceptions concerning the admission and rejection of testimony were noted during the trial, and were preserved in the bill of exceptions then taken, they were all abandoned in the argument made before this court, except the one relating to the evidence of the witness W. H. White. The plaintiff in error was postmaster at Walker, S. C., in September, 1893, and he was indicted for making, as such postmaster, a false return to the auditor of the post-office department, for the purpose of fraudulently increasing his compensation. During the trial, the United States introduced the witness White, who testified that he was postmaster at Lolo, and that, having received instructions to do so, he counted all the letters having the postmark of the Walker office on them, that passed through his office, during said month of September, 1893. To do this he would count letters mailed at Walker and directed to the post office at Fingersville and New Prospect, which he testified he had counted. He also testified that his wife acted as his deputy at Lolo. He was asked, on cross-examination, if he had said, in the presence of the defendant McDowell, at his said post office, in October, 1893, that he had not counted the mail for Fingersville and New Prospect. This question he answered. He was then asked if, during said conversation, his wife had not said that he (the witness) had not so counted the mail directed to the said post offices. The court sustained an objection to this question, and this alleged error we are now to consider.

The evidence so rejected was not material, and the statements made by the wife of the witness, under such circumstances, were clearly irrelevant. Besides, it is evident, from the bill of exceptions, that the matter was presented to the court below with the object only of showing, as an independent fact, that the witness White had not counted the Fingersville and New Prospect mail from Walker. Clearly, it was not proper to show this in that way, although it could have been done by the introduction of witnesses having knowledge of that matter, including Mrs. White herself. If the defense intended, by such cross-examination, to contradict the witness, or to lay the foundation to impeach his testimony, the court should have been distinctly so informed. Only those matters brought to the attention of the court below during the progress of the trial, and then passed upon, will be considered by an appellate court. It does not appear, from the bill of exceptions, that the points now relied upon, and set forth in the assignment of errors, were specifically called to the attention of the court at the time the objections to the question excluded were being considered.

The court below did not err in the rulings complained of, and its judgment is affirmed.