## UNITED STATES *v.* ROYER.

### APPEAL FROM THE COURT OF CLAIMS.

No. 359. Argued April 30, 1925.—Decided May 25, 1925.

1. To constitute an officer *de facto*, it is not essential that there shall have been an attempted exercise of competent or *prima facie* power of appointment. P. 396.
2. The facts that the commanding general recommended an officer's promotion and notified him of his subsequent appointment, and that the officer accepted the office and performed its duties by direction of his superiors, are evidence that a vacancy in that rank existed. P. 397.
3. Claimant, having been recommended by the commanding general during the war for promotion from the office of lieutenant to that of major, and having assumed that rank by direction of the general based on notice from the adjutant general's office that the appointment had been made, and having performed his duties and received his pay as major, was a major *de facto*, although the actual appointment was to a captaincy; and he could not be required

thereafter to refund the amount received in excess of captain's pay. P. 397.

59 Ct. Cls. 199, affirmed.

APPEAL from a judgment of the Court of Claims allowing recovery of an amount deducted from the pay of an army officer.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom the *Solicitor General* and *Mr. Randolph S. Collins* were on the brief, for the United States.

*Mr. George A. King,* with whom *Messrs. William B. King* and *George R. Shields* were on the brief, for appellee.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

On August 5, 1918, General Pershing, commanding the American Expeditionary Forces, recommended by cable to the Chief of Staff the appointment of respondent, then first lieutenant, as major in the Medical Reserve Corps. The Surgeon General of the Army, to whom the recommendation was referred, recommended an approval of the appointment of respondent as captain and this was ratified by the Secretary of War. On September 23, 1918, the Adjutant General cabled General Pershing that the appointment as major had been made, and five days later the Surgeon General's office in France notified the respondent that he had been commissioned as major and requested him to submit his letter of acceptance and oath of office without delay. Respondent submitted a letter of acceptance and executed an oath of office on October 18, 1918, and thereupon assumed the insignia of rank of major, performed the duties appropriate to that office and was so officially addressed. In fact, respondent had been appointed captain and not major; but subsequently, on February 17 1919, he was promoted to the rank of major.

He was not informed until February 19, 1919, that there had been a mistake in the first notice of his appointment as major. He was paid by the pay officers as major during his entire service from October 18, 1918, to the date of his discharge on August 31, 1919. On the latter date there was deducted from his pay, as an overpayment, the sum of $240.19, being the difference between the pay of a captain and that of a major from October 18, 1918, to February 16, 1919. This suit was to recover that amount. The court below, upon the foregoing facts, gave judgment for respondent upon the ground that " having been ordered by competent authority to assume the rank of major, and having discharged the duties of that rank in good faith in time of war, and having been paid the emoluments of that rank in good faith by the officers who are intrusted with the duty of making such payments, he cannot be required to return the money so received to the Government." 59 Ct. Cls. 199.

The Adjutant General, from the nature of his office, is the appropriate channel through which information in respect of appointments and promotions is transmitted. U. S. Army Regulations, 1913, p. 14, paragraph 21; Dig. Op. Judge Advocate General, 1912, pp. 87–88. That officer having informed General Pershing that the appointment of respondent as major had been made, General Pershing was warranted in giving notice to respondent that he had been so appointed, and respondent was justified in accepting and acting upon it. Indeed in time of war and in the field of actual military operations it was his duty to do so. Was respondent, under these circumstances, a major *de facto?* The Government contends not upon the grounds: (1) there was no attempt to appoint him to the office of major by any officer possessing the power of appointment; (2) there is no proof that there was a vacancy in the office of major. Neither ground is tenable.

.1. While some general expressions will be found in the decisions tending to support the Government's contention, the rule is well established that to constitute an officer *de facto* it is not a necessary prerequisite that there shall have been an attempted exercise of competent or *prima facie* power of appointment or election.   The leading case is *State* v. *Carroll,* 38 Conn. 449, 456–466, 472, where the English and American cases are fully reviewed; *In re Ah. Lee,* 5 Fed. Rep. 899, 907 *et seq.; Heard* v. *Elliot,* 116 Tenn. 150, 154.   A good general definition is to be found in *Waite* v. *City of Santa Cruz,* 89 Fed. Rep. 6i9, 627, expressly approved by this Court in *Waite* v. *Santa Cruz,* 184 U. S. 302, 323: "A *de facto* officer may be defined as one whose title is not good in law, but who is in fact in the unobstructed possession of an office and discharging its duties in full view of the public, in such manner and under such circumstances as not to present the appearance of being an intruder or usurper."   A shorter definition is that of the Supreme Court of Kansas, in *Jay* v. *Board of Education,* 46 Kan. 525, 527: "A *de facto* officer is one who is surrounded with the *insignia* of office, and seems to act with authority."   Here, respondent occupied the office and discharged its duties in good faith and with every appearance of acting with authority; and, upon the facts heretofore recited, since he was not a mere intruder or usurper, he must be regarded as an officer *de facto,* within the spirit of the general current of authority.

·· 2. Of course, there can be no incumbent *de facto* of an office if there be no office to fill. *Norton* v. *Shelby County,* 118 U. S. 425, 441.   But the contention that there is no evidence of a vacancy in the office of major in the present case cannot be seriously considered. Everything was done upon the theory that there was such a vacancy; the Commanding General evidently determined that there was; and respondent entered upon and actually performed the duties of that office by direc-

tion of his superior officers. These facts are enough to establish the existence of the vacancy, for it is a well settled rule that all necessary prerequisites to the validity of official acts are presumed to exist, in the absence of evidence to the contrary. *Nofire* v. *United States,* 164 U. S. 657, 660–661.

We need not determine whether respondent might have maintained an action against the Government for unpaid salary; but, clearly, the money having been paid for services actually rendered in an office held *de facto,* and the Government presumably having benefited to the extent of the payment, in equity and good conscience he should not be required to refund it. In substance the case is ruled by *Badeau* v. *United States,* 130 U. S. 439, 452, where this Court, referring to a similar situation, said: "But inasmuch as the claimant, if not an officer *de jure,* acted as an officer *de facto,* we are not inclined to hold that he has received money which, *ex aequo et bono,* he ought to return." See also, *Montgomery* v. *United States,* 19 Ct. Cls. 370, 376; *Bennett* v. *United States, id.* 379, 388; *Palen* v. *United States, id.* 389, 394.

*Judgment affirmed.*