# THE PEOPLE

v.

# JOEL FRANCIS

## District Court of the Virgin Islands

Frederiksted Sub-Judicial District
St. Croix

## June 8, 1936

360

**LEVITT,** *Judge*

Joel Francis was charged with murder in the second degree. After the trial jury had been empanelled, counsel for the defense moved that the defendant be discharged on the ground that the court had no jurisdiction to try the case because the ordinance on which the prosecution was based was invalid. The invalidity of the ordinance was predicated upon the fact that the ordinance was passed by an illegally constituted Colonial Council. The Colonial Council was illegal because its members included persons appointed by the Governor who had no authority to appoint members of the Colonial Council. Thereupon the Judge of the District Court withdrew a juror, dismissed the jury, postponed the trial, and reserved judgment on the motion.

The section of the Code which the accused is charged with having violated is section 2 of chapter V [5], of Title 4 [IV] of the Code of Laws for the Municipality of St. Croix. This ordinance is part of the ordinance which enacted Titles 2, 3, 4 and 5 (II, III, IV and V) of the Code of Laws for St. Croix on May 17, 1920 (published 1921). The motion, therefore, challenges the actual legal existence of Titles 2, 3, 4 and 5 (II, III, IV and V) of the Code of Laws of the Municipality of St. Croix. The issue is squarely raised. We shall decide it.

Two questions are before us:

1. Did the Governor of the Virgin Islands have the legal authority to appoint members to the Colonial Council of St. Croix which enacted Titles 2, 3, 4 and 5 (II, III, IV and V) of the Code of Laws of St. Croix on May 17, 1920?; and,

2. If the Governor did not have such power, were Titles 2, 3, 4 and 5 (II, III, IV and V) of the Code of Laws for the Municipality of St. Croix validly enacted?

At the outset it is to be accepted that this is an American Territory. This is an American Possession. It is not a Danish Possession. Not Danish but American principles of law are to be followed. However much it may have been the intention of Congress to continue the system which was in force at the time when the Territory was taken over, it still remains true that an American system of administration and American system of laws was actually brought here to the Virgin Islands when the Act of March 3, 1917 (ch. 171, 39 Stat. 1132; prec. 1 V.I.C.; 48 U.S.C. §§ 1391, 1392, 1394-1396), was enacted.

It must not be forgotten that the principles of government of the United States are different from those which obtain in Denmark. The latter are monarchal; the former are democratic. The latter provide for a Chief Executive who is supreme over the Legislature and the Judiciary. The former is a government of divided powers. The Executive, the Legislative and the Judiciary are coordinate and equal in regards to each other. One may not encroach on the functions of the others. All three are subject to the Constitution of the United States and the principles of government which that Constitution contains.

Congress intended (by Act Mar. 3, 1917, § 2, supra; 48 U.S.C. § 1392) to continue so much of the former Danish laws as was compatible with the changed sovereignty. That means the continuance of such laws as were compatible with the ideals and ideas of American government. It

365

has always been the American principle to keep the three great departments of government separate and apart (Dillon, Municipal Corporations, sec. 95, 5th ed.). In the federal government the President does not appoint members of Congress. In no State does the Governor appoint members of that State Legislature. In no other territory or possession of the United States does the Governor appoint the local legislative assembly. The entire history of our country shows that the intention of our people has always been to keep the legislative branch of the government as far as possible from executive control. There is no reason to believe that Congress did not intend to place the principle of the separation of powers into the legal system enacted for the Virgin Islands. Only an express and unmistakable statement of Congress that our historic tradition should be departed from can lead us to believe that the American doctrine of the separation of the powers of government is not in force and effect in the Virgin Islands.

Counsel for the government has pressed upon the court the fact that there were in other territories than the Virgin Islands provisions which permitted the *President* to appoint members of the local legislature. The court acknowledges and accepts the argument established by the material which the government counsel presents, but it is to be noted that all of the material presented does in no way establish the principle that the *governor* of any territory has ever had the authority to place his appointees in the local legislature. The President, and his power, are not before us at this time.

██ We are keenly conscious of the delicacy of our task. Courts will not lightly assume to deal with powers that are claimed and exercised by the Chief Executives. Indeed, there is a presumption, which we adopt, that whatever the Chief Executive does is legally done. That presumption,

however, is not conclusive. It may be rebutted. Evidence against it must be considered. But the evidence against it must relate only to the existence of the power which is exercised. The need for its exercise, the wisdom of its operation, the motives which lie behind its use, are entirely outside the sphere of judicial functioning. If, however, it is clear that the power to do or to forbear, which the Chief Executive claims and exercises, does not legally reside in him, the courts cannot hesitate. They must declare the law as they find it. They must protect the rights of those who are immune from the consequences of a power which is illegally asserted and used.

██ ██ The foregoing principles are also germane to the discussion of the relation between the judicial and the legislative branches of the government. The courts have but one function to carry out, so far as legislative is concerned. The courts interpret, construe and apply the laws. The wisdom, the necessity, the expediency of a statute is not for the judgment of the courts. They can but ask: Did the legislature have the power to pass the statute? Was the statute enacted according to law? If the power existed, if it was properly exercised, the courts cannot set the statute aside. It would be the height of judicial arrogance to do so. Hence the presumption exists, which we accept, that the legislature has acted within its powers. That presumption, however, is also rebuttable. It can be overcome. If it is clear that the statute is invalid the courts must make a declaration to the effect.

██ In the instant case we are dealing with a criminal ordinance. Here, too, we have presumption to guide us. A person who is accused of the commission of a crime is presumed to be innocent until he is proved to be guilty. As has often been said, it is better that many guilty persons should go free than that a single innocent man should

be punished unlawfully. This presumption of innocence has weight equal to, if, indeed, not greater than, the weight possessed by the presumptions that the Chief Executive and the Legislature have acted validly within their powers.

██ ██ Furthermore, there is a basic maxim of the common law — nulla crimen sine lege — there can be no crime without a law. No act is criminal unless made so by a valid law. No one can be guilty of a criminal offense unless he has acted so as to violate a valid law. An invalid law is legally nonexistent. It cannot be broken. It cannot be the basis for a criminal prosecution. To try a person for the violation of an invalid statute would be a denial of a basic principle of American law. Such a trial is forbidden by the due process clause of the Fifth Amendment to the Constitution of the United States (prec. 1 V.I.C.). That amendment is in force and effect in the Virgin Islands. Thus the accused, in the instant case, is well within his constitutional rights when he insists that the validity of the statute under which he is to be prosecuted be first passed upon by this court.

██ His attack upon the statute is not collateral. It is direct (Dillon, sec. 650). It is proper. That the statute has remained upon the books for fifteen years unchallenged is immaterial. The passing of time does not make an invalid statute valid. That the questions at issue have not come before us before is also beside the point. The questions are before us now. That is enough. The duty is upon us to decide them. We turn to those questions.

The first question is:

Did the Governor of the Virgin Islands have the power to appoint members of the Colonial Council for the Municipality of St. Croix in 1919-1920?

If that power existed it must be found in the laws of the United States which were in force and effect in the Virgin

Islands in 1920, because only the laws of the United States can operate within territory which belongs to the United States.

■ The supreme law of the United States is the Constitution of the United States. That document nowhere contains any provision which expressly gives the Governor of the Virgin Islands the power to appoint members of the Colonial Council of St. Croix.

Treaties to which the United States is a party are operative in the Virgin Islands. There is no treaty which expressly gives to the Governor of the Virgin Islands the power to appoint members of the Colonial Council of St. Croix. The treaty between the United States and Denmark (1916, proclaimed 1917; prec. 1 V.I.C.) by means of which the United States acquired the Danish West Indies expressly states (in Art. 6) that:

"The civil rights and political status of the inhabitants of the islands shall be determined by the Congress . . . ".

This is simply an acceptance by Denmark of the powers which Congress has by virtue of Article 4, section 3, of the Constitution of the United States. The treaty adds nothing to these powers. Hence if the asserted power of the Governor to appoint members of the Colonial Council of St. Croix exists at all, it must be found in the enactments of Congress. Do such enactments exist?

We are aided in our inquiry by the express claims made by the Governor of the Virgin Islands in 1920. When the Colonial Council for St. Croix met to begin its second session for the year 1919-1920, they received a formal communication from the Governor of the Virgin Islands in which he stated that he appointed certain members of the Colonial Council by virtue of the powers he had under the Act of March 3, 1917 (supra) (Proceedings, Colonial Council of Municipality of St. Croix, 1919-1920).

369

■ We turn, then, to the Act of March 3, 1917 (supra). This Act is the basic law of the Virgin Islands. It is the imperative expression of the will of Congress concerning the government of the Virgin Islands. No powers can be exercised which are in conflict with that Act. No ordinances or resolutions which may be passed by the local Colonial Councils can be valid if they contravene the provisions of that Act. No activities of the Colonial Councils or any other part of the government of the Virgin Islands can be valid if those activities violate the provisions of that Act. (See First National Bank v. Yankton, 101 U.S. 129, 25 L. Ed. 1046; Murphy v. Ramsey, 114 U.S. 15, 5 S. Ct. 747, 29 L. Ed. 47; Church of Jesus Christ v. United States, 136 U.S. 1, 10 S. Ct. 792, 34 L. Ed. 478; Dorr v. United States, 195 U.S. 138, 24 S. Ct. 808, 49 L. Ed. 128.

It must, however, be read in relation to the Constitution of the United States and other congressional enactments which are applicable to the Virgin Islands. As so read, that Act is the supreme law of the Virgin Islands.

Does the Act of March 3, 1917, give the Governor of the Virgin Islands any power to appoint members of the Colonial Council for St. Croix?

An analysis of that statute will make our position clear.

Section 1 of the Act of March 3, 1917 (supra; 48 U.S.C. § 1391) reads as follows:

"That, except as hereinafter provided, all military, civil and judicial powers necessary to govern the West Indian Islands acquired from Denmark shall be vested in a Governor and in such person or persons as the President may appoint, and shall be exercised in such manner as the President shall direct until Congress shall provide for the Government of said Islands: Provided, That the President may assign an officer of the Army or Navy to serve as such Governor and perform the duties appertaining to said office; And provided further, That the Governor of the said Islands

shall be appointed by and with the advice and consent of the Senate; And provided further, That the compensation of all persons appointed under this Act shall be fixed by the President."

It is to be noted that the section purports to confer "all military, civil and judicial powers." It does not expressly mention legislative powers. If, however, we may assume that they come under the word "civil" then we may subsume the legislative powers under the civil powers.

 It is to be noted that all powers conferred by section 1 are subject to the condition, "except as hereinafter provided." The effect of this is to take away complete powers being given to anyone by section 1. That section is subject to all the other sections. Thus, for example, section 3 (48 U.S.C. § 1394), section 4 (48 U.S.C. § 1395) and section 5 (48 U.S.C. § 1396) connote powers relative to taxation which are not given to the Governor and other persons appointed by the President.

It is to be noted that counsel for the government in their very able brief have definitely ignored this phrase, "except as hereinafter provided", and have refused to apply it anywhere in their argument.

 It is further to be noted that the "military, civil and judicial powers" which are conferred are only those which are "necessary to govern" the West Indian Islands. This limits the powers given to the appointees of the President and the Governor to those powers which are necessary to govern.

What is meant by the phrase, "necessary to govern"? The power to govern means the power to do those things which are requisite and essential, to the maintenance of all matters concerning the control of the community. The word "necessary" does not mean "absolutely essential." It might in its context mean "convenient" or "proper." It means that which is reasonably called for to carry out the processes of government.

The government of the Virgin Islands can go on even if only the judges carry on the judicial functions. There is no inherent, compelling need that the Governor be the supreme judicial officer. Our American tradition has been established for many years that it is not convenient, nor proper, that the executive and judicial powers should reside in the same person. So, too, there is no inherent necessity that the Governor be the chief legislator. Congress felt that the people of the Virgin Islands could be trusted to select their legislative representatives. The intention of the election laws establishes that trust. The government of the Virgin Islands can go on even if only those who are elected by the people make the local laws. That, too, would be consonant with our American traditions.

It is, therefore, clear that absolute judicial or legislative powers are not given either to the Governor or to such persons as the President may appoint.

It is also to be noted that the powers given by section 1 must be exercised "in such manner as the President shall direct." Diligent research has failed to reveal any executive order directing the Governor to appoint any person to the Colonial Council. Diligent research has failed to reveal any executive order stating how legislative powers are to be exercised by the Governor. It is reasonable to infer, therefore, that the reason why no executive order has been promulgated is that Congress itself has acted in this matter in section 2 (of Act Mar. 3, 1917, supra; 48 U.S.C. § 1392). It is also reasonable to infer that section 2 cares for the entire matter by incorporating the Amalienborg Code (Colonial Law of Apr. 6, 1906; prec. 1 V.I.C.) in so far as "compatible with the changed sovereignty."

 It is to be noted, furthermore, that under section 1 the powers, "military, civil and judicial" shall be vested, first, "in the Governor." Of course, he could have

been given all powers. Had it been the intention of Congress to give all civil, military and judicial powers to the Governor, the sentence could have stopped after the word "Governor." But the language goes on to say, "and in such person or persons as the President may appoint."

This makes it clear that the Governor is not omnipotent. Other persons may also function. They may be appointed by the President. No power of appointment to the Colonial Council of St. Croix is given to the Governor in section 1 of the Act of March 3, 1917. Nor does the Act of March 3, 1917, anywhere contain any provision which gives to the Governor the power to appoint anyone to any office or position. So that, if it could be assured that all legislative powers reside in the Governor, he has no express authority to appoint persons to exercise the legislative powers for him. And even if there should be an inherent power to appoint legislators, that power would, by express enactment of Congress, be subject to the provisions of section 2. Hence the power to appoint legislators would be expressly excluded, because the election laws are expressly excepted to be out of the powers granted by section 1.

There is nothing in section 1 of the Act of March 3, 1917, which gives to the Governor the power to appoint members of the Colonial Council for St. Croix.

We turn then to section 2 of that Act.

It is to be noted that there are two conditions set out which control the provisions of section 2. First, those provisions shall not be in conflict with the rest of the Act of March 3, 1917; second, they must be "compatible with the changed sovereignty."

We have already held, following out the principles enunciated by the (United States) Circuit Court of Appeals for the Third Circuit, that "compatible with the changed sovereignty" means, compatible with the Constitution and

laws of the United States as they have been interpreted by the Supreme Court of the United States, and ideas and ideals of the American principle of government (See Vessuup v. Election Board, November Term, 1935). We turn, then, to the rest of that phrase from which we have quoted: "The laws regulating elections and the electoral franchise as set forth in the code of laws published at Amalienborg . . . " are to be in force and effect.

We have already held that the election laws include sections 14 to 37 of the Amalienborg Code of 1906 (See Richardson v. Elective Board, No. 119, April Term, 1936 [p. 301, this volume]). We have also held that the phrase "local laws" includes those sections of the Amalienborg Code of 1906 which are compatible with the sovereignty of the United States, and were not in conflict with the provisions of the Act of March 3, 1917. (See People v. Francis, November Term, 1935). (Cf. State v. Blukeley (Conn. Sup. Ct. of Error), 14 L.R.A. 657, 661.)

Is there any section of the Amalienborg Code of 1906 which gives to the Governor of the Virgin Islands the power to appoint members of the Colonial Council for St. Croix? We have been unable to find such a section.

The then Governor of the Virgin Islands claimed that he was acting under the provisions of section 14. Section 14 reads as follows:

"The Colonial Council for the Island of St. Croix shall consist of 13 members elected by popular elections, and of 5 members nominated by the King. The Colonial Council for the Island of St. Thomas with St. Jan shall consist of 11 members elected by popular elections, and of 4 members nominated by the King."

It is obvious, at once, that the phrase "and of five members nominated by the King" is not compatible with the sovereignty of the United States.

The only one who has succeeded to the sovereignty form-

374

erly exercised by Denmark are the People of the United States. They have expressed their will in the Constitution of the United States. That Constitution gives the sovereign power to govern the Virgin Islands to Congress. Congress stated in 1917 that the Colonial Council for the Island of St. Croix shall consist of 13 members elected by popular election. That statement has not been revoked or changed. It was in force and effect in 1919 and 1920. That express and positive statement negatives any possibility that the Colonial Council of St. Croix could consist of any members who were not elected by popular election. It does not give the Governor the power to appoint members to the Colonial Council of St. Croix.

Counsel for the government stresses the effect of section 33 of the Amalienborg Code of 1906 as showing that the Governor of the Virgin Islands has power to appoint members of the Colonial Council of St. Croix. That argument cannot be sustained. Section 33 reads as follows:

"When the popular elections are ended, the King will determine whom he will nominate as Crown members of the respective Colonial Councils, according to Section 14."

It is clear that this section in its unchanged state gave power to the king to nominate crown members. It is clearly incompatible with the changed sovereignty. That section falls when the phrasing of section 14 falls.

The same section says in paragraph 2, that, "Should the King think proper to do so, he may authorize the Governor to nominate the Crown members." It is to be noted that this gives power to the king to delegate his privilege to the Governor. It does not give power to the Governor to nominate Crown members. That power which the king had disappeared when the sovereignty of the United States became effective in the Virgin Islands. Further, it is to be noted that the power of the king cannot be extended to an American Governor. It would be a con-

flict of sovereignties to permit this. A foreign king cannot give executive powers to the Governor of an American territory. Furthermore, it is to be noted that no power *has been given* by the *King of Denmark* to an American Governor to nominate members of the Colonial Council of St. Croix. So that even if the king *had* the power to delegate his power to an American governor, such delegation has not been made.

Again, if Congress takes the place of the king, which is unthinkable, as Congress acts under the Constitution of the United States, Article 4, section 3, still Congress *did not* give power to the Governor to appoint members of the Colonial Council for St. Croix. Furthermore, if the President takes the place of the former King of Denmark, which would be most ludicrous to suppose, then, so far as we can find from the executive orders, the President did not give his power to nominate members of the Colonial Council of St. Croix to the Governor of the Virgin Islands.

The then Governor of the Virgin Islands also apparently relied upon section 17 and section 35 of the Amalienborg Code of 1906. He says, in the communication already referred to, that he acts "By virtue of the power conferred on me." That communication reads as follows:

"Colonial Council, St. Croix, V. I., U. S. Gentlemen: You are hereby notified that pursuant to Paragraph 17, Section 35 of the Colonial Law, as amended by the Act of Congress of the United States, a general election has been held . . ."

He then names those members. The quotation continues:

"By virtue of the power conferred on me as Governor of the Virgin Islands of the United States, I do hereby appoint Messrs. K. Henderson, D. C. Armstrong and F. Lunney as respective First, Third and Fifth Appointed Members of the Colonial Council for St. Croix for the election period, in accordance with paragraph 17 and 35 of the Colonial Law, to reckon from May 10, 1919." Signed "J. W. Oman Governor"

Section 17, however, deals only with elected members. It does not deal with appointed members.

Section 35 deals with general elections and with elected members. It has nothing to do with appointed members. If the then Governor relied upon the two sections of the Amalienborg Code of 1906, he relied upon that which gives him no support.

The Governor also refers to "Paragraph 17, Section 35" in the letter to which I have already referred. We regret to find that there is no "Paragraph 17, Section 35" in the Amalienborg Code of 1906. It may be that it was a typographical error. It may be that the then Governor intended to refer to sections 17 and 35 of the Colonial Law to which we have already adverted. In that case it is clear once again that section 17 and section 35 do not refer to appointed members at all.

Careful attention should also be given to section 19 of the Amalienborg Code of 1906, where the qualifications for membership in the Colonial Council appear. That section is compatible with American sovereignty. Qualifications are laid down carefully for elected members, but no qualifications at all are given for appointed members. This seems hardly reasonable if the Governor is to have power to appoint. He could appoint anyone whom he may wish. If he has that power to appoint he may appoint anyone, however incompetent the latter may be. The Colonial Council cannot question or challenge the qualification of the Governor's appointees (35 Op. Atty. Gen. 104). He can appoint those who represent his own ideas and will do his bidding. He can exercise undue influence simply because of the appointing power which he possesses. But it was the express intention of Congress to prevent that undue influence. The Governor and those who are close to him in the administration of the govern-

377

ment are expressly declared to be ineligible to membership in the Council. Section 19 says:

"The Governor, as well as the Government's Secretaries, as also the Officials and Assistants in the Secretary's, the Bookkeeper's and Treasurer's Offices, are not eligible."

Here again the American doctrine of the separation of the powers of government makes it clear that it was not the intention of Congress to give the Governor the power to appoint members to the Colonial Council of St. Croix.

If there is any law of the United States which confers power on the Governor of the United States to appoint members of the Colonial Council of the Municipality of St. Croix, diligent research has failed to reveal that law, or to find any other lawful document which purports to confer that power.

██ It has been argued, and most ably by counsel for the government, that the Colonial Council which passed the titles of the Code under discussion was at least a de facto legislature, if it was not a de jure legislature. This argument is untenable. A de facto legislature is a contradiction in terms. The Colonial Council of St. Croix is either properly constituted under the laws of Congress or it has no legal existence at all.

Counsel for the prosecution has not kept clear the distinction between the operative force of the acts of a person who enters upon the performance of the duties of a legally constituted office and the legality of the existence of the office itself. A de facto office is a legal myth. Suppose that a person should set himself up as Emperor of the Virgin Islands and issue an edict that all others were to pay taxes to him under penalty of imprisonment. Can it be rationally argued that the people of the Virgin Islands must obey that edict? Surely it is entirely clear that the office of Emperor of the Virgin Islands is

378

nonexistent. There can be no de facto incumbent of that office.

■■ So, too, suppose that 13 persons should set themselves up as the Colonial Council of St. Croix without having been elected to that body. Can it rationally be argued that they are the Colonial Council of St. Croix? It cannot. Legally the only Colonial Council that can exist is the one that comes into being in the manner prescribed by the laws of Congress. There can be no de facto Colonial Council of St. Croix.

A clear distinction also exists between de facto officers and illegal usurpers of power. De facto officers have received legal recognition. In that far* they are de jure. But usurpers of power have never received legal recognition in American law. Again, de facto officers enter upon their duties under color of right and law. But persons appointed by the Governor of the Virgin Islands to the Colonial Council of St. Croix have not even the slightest color of right. Their appointments are void ab initio. In legal contemplation the appointments have never been made. In this case the question of de facto officers is not even reached. We are dealing only with a case which involves persons who are legally present in the Colonial Council. While regretting the harshness of the terms which we must use, we are constrained to say that they are usurpers of place and must be denominated as such. Legally they are nonexistent. Legally they must be ignored by the courts until their activities are challenged in a properly instituted case. But no person is bound by the purported legislation of legally nonexistent legislators. Such attempts at legislation are abortive ab initio. They certainly cannot be the foundation for a criminal prosecution. (See cases cited in footnote.)

■■ The suggestion has been made by counsel for the government that as the Colonial Council of St. Croix

*So in original.

has acquiesced in the presence of persons appointed by the Governor and has permitted them to participate in the legislative functions for sixteen years, it is now too late to challenge that procedure. That suggestion is untenable. There is not the slightest vestige of law, with which we are familiar, or to which our attention has been called, that prevents a person accused of committing a crime from challenging the legality of the statute upon which his prosecution is predicated. There is no such statute of limitations against a defense to a criminal charge.

The motives which drove the members of the Colonial Council of St. Croix to tolerate those who were illegally among them are outside of the jurisdiction of this court. It may be that the legal members of the Colonial Council of St. Croix, through ignorance of their right to eject intruders, or through fear of the consequences of such action, or through deliberate design, have accepted the presence of those who were illegally among them. Such acceptance, however, does not validate the acts of the intruders. The Colonial Council of St. Croix has no legal authority to permit persons who have not been elected to the Colonial Council to legislate for the people of St. Croix. Nor is it within the power of the Colonial Council of St. Croix to validate the act of the Governor in appointing persons to the Colonial Council of St. Croix. The membership in the Colonial Council has been fixed by Congressional enactments. The Colonial Council of St. Croix is bound by those enactments. In this connection we wish to adopt the language just used by the Supreme Court of the United States in a decision handed down May 19, 1936: "The statute was evidently drawn with care. Its language is plain and unambiguous. What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what we omitted, presumably (possibly) by inadvertence, may be included

within its scope. To supply omissions transcends the judicial function." (Wallace v. Cutten, 298 U.S. 229, 56 S. Ct. 753, 80 L. Ed. 1157.)

 Council for the government has also pressed upon the Court the argument that contemporary and long established administrative interpretation of a statute should be conclusive upon the Court. That argument does not apply in the instant case. We are not dealing with the interpretation of a statute, but with the assumption and exercise of a power. It can hardly be said that any action which takes place for one or two years after territory has been acquired constitutes a long continued administrative procedure which establishes the presumption of legality of action.

 Furthermore, the presumption that the power to appoint was validly exercised is completely destroyed by the historic fact that the then Governor who was in office at the time when the titles to the Code of Law of St. Croix which are now in question were adopted, and whose appointees are challenged in this case, had assumed to exercise other powers which he did not possess and had failed to carry out the obligations of his office as required by law. (United States v. Malmin (1921) 272 Fed. 785).

 As diligent and intensive research has failed to show that the Constitution of the United States, the treaty with Denmark, and the laws of the United States confer any power upon the Governor of the Virgin Islands to appoint members to the Colonial Council of St. Croix, we must, and we do, hold that the Governor of the Virgin Islands did not have the power to appoint members to the Colonial Council which enacted Titles 2, 3, 4 and 5 (II, III, IV and V) of the Code of Laws for the Municipality of St. Croix on May 17, 1920 (published in 1921).

We now turn to the second question. "Were Titles 2, 3, 4 and 5 (II, III, IV and V) of the Code of Laws for the Municipality of St. Croix validly enacted?"

At the outset it is to be observed that the defendant does not challenge in any way the formalities connected with the enactment of the Code of Laws. Indeed such a challenge could not be considered. The Colonial Council is the judge of its own proceedings. The ordinance, duly engrossed, is conclusive evidence of its own terms and of the fact that the Colonial Council intended to enact that which it has accepted as its own work. The defendant's claim goes deeper. It challenges the power of the Colonial Council to legislate at all if ineligible persons participate in the deliberations and activities of the Colonial Council. He claims that the functioning in the Colonial Council of the appointees of the Governor, vitiates all the activities of the Colonial Council, and that nothing which the Colonial Council did was legally valid. Particularly he insists that the express section under which he is to be prosecuted is void. It must be said that he has some authority to support him. (State v. Francis, 26 Fed. 66; Dinwiddie v. Rushville, 37 Fed. 66.)

This claim is far reaching. If it is sound, then, by parity of reasoning, all sections of Titles 2, 3, 4 and 5 (II, III, IV and V) are void. Everything which has been done under them has been illegally done. Furthermore, all of the Colonial Councils in the Virgin Islands have had appointed members serving in them from 1920 to the present date. By implication the claim made by the defendant applies to ordinances and resolutions passed by all the Colonial Councils since the American occupation. Local laws must be wiped out. All that has been done under them has been illegally done. The jails and penitentiaries must be emptied; the doors of the insane asylum must be opened; taxes, fines and penalties must be restored; property rights deemed to be vested for 16 years must be declared to be nonexistent. The administration of estates could be challenged and gave doubt would be cast

upon all domestic relations. Legal and economic chaos would result from the acceptance of the defendant's claim.

We do not believe, however, that we must play the part of a legal earthquake to safeguard the rights of the defendant. If we can give the defendant his constitutional rights under the Fifth Amendment, which guarantees to him due process of law, and still conserve the legal structure which Congress enacted for the Virgin Islands, we must do so. We can do so.

■-■ We are permitted to go behind the Code of Laws of the Municipality of St. Croix to the journals of the proceedings of that Colonial Council. (Cooley: Constitutional Limitations (7th Ed.) p. 193 and cases cited.) By doing so we find that Titles 2, 3, 4 and 5 (II, III, IV and V), which are the only ones before us, were validly enacted. This is so because section 38 of the Amalienborg Code of 1906 (Colonial Law of Apr. 6, 1906), which was, and is, in force and effect, is conclusive in this matter. Section 38 provides that:

"No resolution can be adopted by any of the Colonial Councils, when less than half of its members are present."

The word "resolution" means "decisions." It comes from the Danish (we shall not attempt to pronounce) "b-e-s-l-u-t-i-n-g,' which means "decision" or "determination." Larsen: Danish-English Dictionary, p. 49. It follows, then, that if one-half or more of the members of the Colonial Council are present, valid action may take place.

The Amalienborg Code contains no provision concerning the number of votes which are necessary to pass an ordinance. Under the usual rules of parliamentary procedure, either a majority, or a plurality vote, is requisite to pass any law, resolution or ordinance. The Colonial Council of St. Croix has an inherent power to follow the usual practice of legislative assemblies. If it does so there is "due process of law."

The journal of the proceeding of the Colonial Council of St. Croix for May 17, 1920, shows that all thirteen of the properly elected and duly qualified members of the Colonial Council were present at the time that Titles 2, 3, 4 and 5 (II, III, IV, and V) were adopted. All thirteen voted in favor of the adoption of those titles. The right and power of the legally elected members of the Colonial Council to carry on their functions cannot be denied to them simply because illegal appointees of the Governor were present and participating in the activities of the lawfully acting Colonial Council. That the lawfully elected members could have ejected the unlawfully appointed persons and did not do so is immaterial. The votes which the appointed persons cast may be ignored. We do ignore them. Norton v. Shelby County, 118 U.S. 425 (449), 6 S. Ct. 1121, 30 L. Ed. 178. We base our decision simply upon the fact that the lawfully elected members acted lawfully in passing Titles 2, 3, 4 and 5 (II, III, IV and V) of the Code of Laws for the Municipality of St. Croix. Those Titles were validly enacted. And we so hold.

 In order that we might make our position entirely clear, we state that the principles of law contained in this opinion apply also to the (1921) Code of Laws of the Municipality of St. Thomas and St. John. To forestall needless litigation, we add that the burden rests on him who challenges the validity of a statute to sustain his challenge by clear and positive evidence.

 To prevent misinterpretation of this decision we quote section 6 of the Amalienborg Code of 1906 (Colonial Law of Apr. 6, 1906):

"The Courts of Justice are authorized to pass judgment on any question relating to the extent of power vested in the administrative Authorities. The person who moots such a question is not, however, by doing so, exempted from obeying the orders of the Authorities."

The motion to discharge the defendant is denied. His trial will proceed according to law.

Note. The United States Supreme Court has held in the case of Norton v. Shelby County (1886) 118 U.S. 425 (449), 6 S. Ct. 1121, 30 L. Ed. 178, that: "Where no office legally exists the pretended officer is merely a usurper to whose acts no validity can be attached." This has been confirmed by a subsequent decision of the United States Supreme Court, which has stated that: "Of course, there can be no incumbent de facto of an office if there be no office to fill." United States v. Royer (1925) 268 U.S. 394 (397), 45 S. Ct. 519, 69 L. Ed. 1011.

The case of Norton v. Shelby County (1886) 118 U.S. 425 (449), 6 S. Ct. 1121, 30 L. Ed. 178, is the leading case on the subject. In accord are the following: Hildreth's Heirs v. M'Intire's Devisee (1829) 1 J. J. Marsh. (Ky.) 206; Carleton v. The People (1862), 10 Mich. 250 (259); State v. Carroll (1871) 38 Conn. 449 (analyzed in Norton case, supra); Cocke v. Halsey (1842) 16 Peters 71, 10 L. Ed. 891. Other cases in which the same principles have been applied are as follows: Lyons v. Woods (1894) 153 U.S. 649 (669), 14 S. Ct. 959, 38 L. Ed. 854; Wright and Wade v. United States (1895) 158 U.S. 232 (239), 15 S. Ct. 819, 39 L. Ed. 963; McDowell v. United States (1895) 159 U.S. 596 (601), 16 S. Ct. 111, 40 L. Ed. 271; Shapleigh v. San Angelo (1897) 167 U.S. 646 (658), 17 S. Ct. 957, 42 L. Ed. 310; Ex parte Henry Ward (1899) 173 U.S. 452 (456), 19 S. Ct. 459, 43 L. Ed. 765; Tulare Irrigation District v. Shepard (1902) 185 U.S. 1 (14), 22 S. Ct. 531, 46 L. Ed. 773; McClaughry v. Deming (1902) 186 U.S. 49 (64), 22 S. Ct. 786, 46 L. Ed. 1049; Ashley v. Board of Sup'rs, etc. (1893) 60 Fed. 55 (64, 70); McDowell v. United States (1896) 74 Fed. 403 (406); Continental Trust Co., et al. v. Toledo, St. L. & K. C. R.R. Co. (1897) 82 Fed. 642 (649); Miller v. Perris Irrigation Dist., et al. (1898) 85 Fed. 693 (699); Liverpool & London & Globe Ins. Co. v. Clunie (1898) 88 Fed. 160 (173); Spear v. Board of County Com'rs (1898) 88 Fed. 749 (764); Miller v. Perris Irrigation Dist., et al. (1899) 92 Fed. 263 (265); Toledo, St. L. & K. C. R.R. Co., et al. (1899) 95 Fed. 497 (509); Herring v. Modesto Irr. Dist. (1899) 95 Fed. 705 (713); Baltimore Building & Loan Ass'n v. Anderson (1900) 99 Fed. 489 (494); Crowley v. Southern Ry. Co. (1905) 139 Fed. 851 (853); Johnson v. Manhattan Ry. Co., et al. (1932) 1 F. Supp. 809 (819); United States v. Royer (1925) 268 U.S. 394 (397), 45 S. Ct. 519, 69 L. Ed. 1011; City of South Houston v. Carman (1925) 6 F.2d 358 (360); Troy Ice & Beverage Co. v. United States (1926) 15 F.2d 609 (610).