May 18, 1978

## 78-94 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Department of Energy—Appointment of Interim Officers—Department of Energy Organization Act (42 U.S.C. § 7342)

This responds to your request for our opinion concerning the legality of the designation of certain acting officials by the Secretary of Energy.

The Department of Energy was established by the Department of Energy Organization Act of August 4, 1977, Pub. L. 95-91, 91 Stat. 565, 42 U.S.C. § 7101 *et seq.* (Supp. 1, 1977) (the Act). The Act involved the merger of the Federal Energy Administration (FEA), the Energy Research and Development Administration (ERDA), and the Federal Power Commission, and included the transfer of certain functions to the new Department from several other Government agencies (Title III of the Act). When the Department became operative on October 1, 1977, pursuant to Executive Order No. 12009, the Secretary was the only officer required to be appointed by and with the advice and consent of the Senate who subsequently was confirmed. The President filled eight other positions in the Department requiring Senate confirmation on a temporary basis pursuant to § 902 of the Act, 42 U.S.C. § 7342,[1] by designating officers of the predecessor agencies, who had been appointed by and with the advice and consent of the Senate and who had held those positions immediately prior to the effective date of the Act,[2] to perform the duties of the vacant departmental offices to which they were assigned.

---

[1]Section 902 of the Act provides:

> In the event that one or more officers required by this Act to be appointed by and with the advice and consent of the Senate shall not have entered upon office on the effective date of this Act, the President may designate any officer, whose appointment was required to be made, by and with the advice and consent of the Senate, and who was such an officer immediately prior to the effective date of the Act, to act in such office until the office is filled as provided in this Act. While so acting such persons shall receive compensation at the rates provided by this Act for the respective offices in which they act.

[2]Section 703 of the Act (42 U.S.C. § 7293) terminated the predecessor agencies of the Department of Energy, and, generally speaking, the advice and consent offices in those agencies as of the date when the Department of Energy became operative.

For four positions—the Offices of General Counsel, Inspector General, and Assistant Secretaries for Conservation and Solar Applications and for Energy Technology—we have been advised that no officers were available in the predecessor agencies who had been appointed with confirmation by the Senate. We have also been informed that, because Presidential designations under § 902 from personnel of the predecessor agencies were not possible, the remaining four positions were filled by the Secretary of Energy designating the Acting General Counsel and the Acting Inspector General of the Federal Energy Administration, and the Acting Administrator for Solar, Geothermal and Advanced Energy Systems and the Acting Administrator for Nuclear Energy of ERDA to perform the duties of the respective vacant offices on an acting basis. The Acting Assistant Secretary for Defense Programs, one of the officers designated by the President pursuant to § 902 of the Act, resigned effective January 1, 1978. The Secretary thereupon designated his deputy as the Acting Assistant Secretary to act in his position.

The President has submitted to the Senate nominations for four of the eight positions requiring Senate confirmation.[3] He has indicated his intention to nominate an Assistant Secretary for Defense Programs, but as of this writing no nomination has been formally submitted to the Senate. The nominees for the positions of General Counsel, Inspector General, and Assistant Secretary for Energy Technology were recently confirmed by the Senate. Their appointments are imminent, in which event the designation of the acting officials will, of course, terminate. The Acting Assistant Secretary for Energy Technology designated by the Secretary was the only acting official who has been nominated by the President to the same position.

I.

The authority of the remaining five officers to act under Secretarial designation has been questioned on the ground that it is inconsistent with § 902 of the Act (fn. 1, *supra*). It is asserted that § 902 establishes the exclusive manner in which interim appointments to fill initial vacancies in the Department of Energy may be made. We disagree. Although § 902 was designed to give the President the means to make interim designations in the Department of Energy where possible, we doubt that Congress intended to tie his hands and compel him to make what would be unsuitable designations to the detriment of the newly established Department, or to preclude any other method to fill those positions.

There is no legislative history to guide us concerning the scope of § 902. The statutory language, "the President may designate any officer," indicates that

---

[3]Nominations were submitted as follows: Assistant Secretary for Energy Technology, September 13, 1977, resubmitted January 26, 1978; General Counsel, September 22, 1977, resubmitted January 25, 1978; Assistant Secretary for Conservation and Solar Applications, January 25, 1978; Inspector General, April 20, 1978.

the section was intended to confer on the President a discretionary power to be exercised in conformity with the statutory purpose, rather than a binding and exclusive method of appointment, which, as the result of circumstances apparently not anticipated by Congress, would have brought about a highly undesirable result.

When Congress provided for the establishment of the Department of Energy, it was a reasonable assumption that officials on the Assistant Secretary level, requiring Senate confirmation, would hold positions requiring highly specialized technical expertise, and that at least some of the nominations to those positions would go to persons who had held corresponding advice and consent positions in some of the predecessor agencies of the department. It was equally reasonable to expect that some of the nominations might not be acted upon by the time the Department became operative. The question of effectively providing for interim appointments was certainly one that could not be ignored.

The existing procedures provided for in the Vacancy Act (5 U.S.C. §§ 3345-3349 (1976)) were not adapted to initial vacancies in a newly established department of the character of the Department of Energy. Section 3346 provides that in the case of a vacancy in a bureau of an Executive department[4] the first assistant shall act unless the President makes a designation under § 3347. It is difficult to envisage a "first assistant" before there is an Assistant Secretary.[5] Section 3347 provides an alternative method of filling a vacancy. The President can designate a department head or any other officer appointed by and with the advice and consent of the Senate to perform the duties of the vacant office. That procedure, however, was unsuited to the situation confronting the Department of Energy for several reasons.

As mentioned above, § 703 of the Act, *supra*, terminated, as of the date when that Department became operative, the predecessor agencies of the Department of Energy and the positions in those agencies that were either expressly authorized by law or compensated according to the Executive Schedule. Because the officers in those agencies who had been appointed by and with the advice and consent of the Senate lost that status under § 703 of the Act, the President could not designate them as acting officers under § 3347. If § 3347 were controlling, his choice therefore would have been limited to those already serving in advice and consent positions in other agencies. This would mean not only that it would be extremely difficult, if not impossible, to find acting officers possessing the necessary technical qualifications for the highly specialized positions in the Department of Energy, but even then the designees could perform those duties only on a part-time basis.

We do not doubt that the temporary filling of positions at the Assistant Secretary level by persons who both lacked the necessary expertise and could

---

[4] A departmental unit headed by an Assistant Secretary or comparable officer usually constitutes a bureau.

[5] Moreover, the Attorney General has interpreted the term "first assistant" as applying only to officials whose appointment has been specifically provided for by statute. 28 Op. A.G. 95 (1909); 19 Op. A.G. 503 (1890).

not devote their entire time to the new position could readily have presented difficulties for the new Department during the crucial first months of its existence. Moreover, under the Vacancy Act *ad interim* designations could last for only 30 days. Experience amply demonstrates that under present conditions, Senate confirmation frequently takes longer than that.[6]

As we see it, § 902 was designed by Congress to avoid Vacancy Act problems by enabling the President to make *ad interim* designations of experienced officials of the predecessor agencies who could serve on a full-time basis even if they no longer held advice and consent positions, and permit them to serve more than 30 days if necessary. The last sentence of § 902 indicates plainly that Congress intended that the interim designations under that section would primarily, if not exclusively, be given to former advice and consent officers who had served in the predecessor agencies, *i.e.,* the acting official would receive compensation at the rate provided by the Act for the office in which he would serve on an acting basis. We believe it was intended to take care of the following problem: The designee originally was an advice and consent official in a predecessor agency and as such received compensation under the Executive Schedule (5 U.S.C. §§ 5311-5316). When the President designated him to be an acting official he was no longer an advice and consent officer as the result of § 703 of the Act which abolished his former position (*see* n. 2, *supra*); hence he would have to be appointed to a position that did not require Senate confirmation and that carried a lower rate of compensation.[7] Section 5535 of Title 5 prevents payment to an acting official of compensation in addition to that of the regular position he holds. The last sentence of § 902 thus has the effect of avoiding a reduction in compensation during the confirmation proceedings.

In short, § 902 is specifically addressed to the situation in which the President intended to appoint an advice and consent officer of a predecessor agency of the Department of Energy to a corresponding position in that Department but could not expect confirmation prior to the activation of the Department.

But § 902 was not a complete solution. When the Department of Energy became operative, it appeared that there was no suitable advice and consent officer, either in a predecessor agency or elsewhere, whom the President could designate to serve full-time in an acting capacity in the several advice and consent positions in the Department. If such officers had been available, undoubtedly the President would have restored to the authority given him by § 902.

A mechanistic interpretation of the section leads to a view that is so extreme that we cannot attribute it to the intent of Congress, namely, that the President

---

[6]In the situation at hand the confirmation of the General Counsel and of the Assistant Secretary for Energy Technology took approximately seven months.

[7]*I.e.,* at a supergrade, rather than in the Executive Schedule usually applicable to positions at the Assistant Secretary level.

was required to designate an advice and consent officer, presumably from another agency, regardless of his qualifications and expertise and his ability to devote himself full-time to the office, or that no designation to the office could be made at all. Either alternative would be inconsistent with what we perceive to be legislative purpose of § 902, that vacancies in the Department of Energy were to be filled during the critical first months of its existence on a full-time basis by officials who possessed the necessary expertise. An interpretation of § 902 to the effect that it was intended to provide the *exclusive* method of filling initial vacancies in the Department of Energy is both inconsistent with its discretionary language and would defeat the purpose it was designed to accomplish. It is a familiar axiom of construction that a statute is not to be interpreted in a manner at variance with its policy and purpose. *United States* v. *American Trucking Associations*, 310 U.S. 534, 543 (1940); *United States* v. *Bisceglia*, 420 U.S. 141, 149-150 (1975).

II.

We therefore conclude that § 902 is not intended to establish the sole method of filling vacancies in the Department of Energy. The President no doubt would have used that provision if all its underlying premises could be met, *i.e.*, if qualified advice and consent officers were available who could devote themselves full-time to the acting position. But we do not believe that the section is to be construed as meaning that such vacancies may not be filled at all on a temporary basis, if no advice and consent officers are available. On the contrary, it would appear that the fundamental statutory purpose—that these positions should be filled temporarily on a full-time basis by persons having the necessary expertise—strongly supports the conclusion that the President or the Secretary of Energy should look for other sources of authority to carry out that statutory end.

Having disposed of the question of the Vacancy Act, we think that the Secretary of Energy had to rely on his general powers and responsibilities, including those under 5 U.S.C. § 301,[8] which he did by designating the most experienced officials in the departmental subdivisions in which vacancies existed. That procedure, while not specifically authorized by § 902, carried out what we regard as its purpose—that the vacancies should be filled by qualified persons on a full-time basis. In this context, the observations of the opinion of the Court of Appeals in *Williams* v. *Phillips*, 482 F.(2d) 669, 670-671 (D.C. Cir. 1973), are helpful. There the court suggested that keeping the Government

---

[8]5 U.S.C. § 301 provides:

> 301. Departmental regulations
>    The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

running warrants the designation of acting officials to fill vacancies in the absence of express statutory authority. Similar considerations should be applicable where the strict requirements of the pertinent statute cannot be met due to unforeseen circumstances. The court, however, added that such extra-statutory designations could not last indefinitely unless nominations were submitted to the Senate within a reasonable time. In the circumstance of that case the court suggested that the 30-day provision of the Vacancy Act, 5 U.S.C. § 3348 (1976), should serve as a guideline; hence that the designee in question was no longer entitled to hold that position when no nomination had been submitted for 4½ months after the vacancy had occurred.[9] If the *Phillips* decision is used as a guideline, it indicates that the designations of the Acting General Counsel and the Acting Assistant Secretary by the Secretary for Energy Technology met the requirements of that decision. The nominations for the two offices were submitted to the Senate in September 1977, *i.e.*, even before the Department of Energy was activated. Their extended acting service has been due exclusively to delay in the confirmation process.

The case of the Acting Assistant Secretary for Conservation and Solar Applications is not so clear, because a nomination for that office was submitted to the Senate only on January 25, 1978, nearly 4 months after the vacancy occurred. However, the reasonableness of the delay in submitting a nomination must also be measured against the difficulty of finding suitable candidates for the complex and responsible positions in the Department of Energy and the uncertainties created by delays in the enactment of the pending energy legislation. Moreover, it should be noted that the delay in the nomination included the period from December 15, 1977, to January 19, 1978, during which the Senate was in recess between the two sessions of the 95th Congress and during which no nominations could be made. Similar observations could apply to the offices of the Assistant Secretary for Defense Programs and the Inspector General.

## III.

Finally, we turn to the legality of the actions taken by Department of Energy officials in an acting capacity, if it should be thought that some or all of them did not hold their positions *de jure*. Under the *de facto* officer rule, one who performs the duty of an office under color of title is considered a *de facto* officer, his acts are binding on the public, and third persons may rely on their legality. *McDowell* v. *United States*, 159 U.S. 596, 601-602 (1895); *United States* v. *Royer*, 268 U.S. 394 (1925); *United States* v. *Lindley*, 148 F.(2d) 22, 23 (7th Cir. 1945), cert. den., 325 U.S. 858. Indeed, the authority of *de facto*

---

[9]An aggravating element in the *Phillips* case was that the acting officer in that case was charged with seeking to sabotage the statute he was required to administer. That consideration, of course, is absent in the case at hand. To the contrary, the purpose of the designation was to further the administration of the statute and to comply with the spirit of § 902.

officers can be challenged as a rule only in special proceedings in the nature of *quo warranto* brought directly for that purpose. *United States ex rel. Dorr* v. *Lindley, supra; United States* v. *Nussbaum,* 306 F. Supp. 66, 68-69 (N.D. Cal., 1969); Mechem, *Public Office and Officers,* §§ 343, 344 (1890).

The basis for the *de facto* officer principle is the avoidance of any cloud on the validity of public acts and on the right of the public to rely on them despite subsequent questions as to the authority of the officer to exercise the powers of the office.[10] A typical case of a *de facto* officer is one who continues to serve after his term of office has expired. *Waite* v. *Santa Cruz,* 184 U.S. 302, 322-24 (1902); *United States* v. *Groupp,* 333 F. Supp. 242, 245-46 (D. Maine 1971), *aff'd,* 459 F.(2d) 178, 182 n. 12 (1st Cir. 1972). This consideration is of particular importance in view of the position of the Court of Appeals in *Phillips* that the initially valid designation of an acting official may be vitiated by an excessive delay in the submission of a nomination.

## IV.

Finally, the question has been raised whether some of the acting officials have received the compensation for the positions in which they act pursuant to the last clause of § 902. We have been advised by the Department of Energy that these acting officials have not been compensated at the executive level rates provided in § 902, but rather have been paid the appropriate compensation under the GS salary scale that applies to GS positions in the excepted service.

## V.

We have read the opinion of the Acting Comptroller General dated May 16, 1978, addressed to this problem. We agree with it to the extent that it concludes that the Vacancy Act is inapplicable to the situation at hand. We disagree, however, with the result reached in the opinion. It totally ignores considerations found by us to be decisive. The Comptroller General apparently has concluded that § 902 provides the exclusive method for making interim appointments at the Department of Energy, but has not addressed the factors which led us to the contrary conclusion. The nonmandatory language of the statute, the absence of guiding legislative history, and the plain purposes of the section all convince us that Congress did not intend to make it the exclusive method. Section 902 was written into the law because Congress desired that the advice and consent positions in the Department of Energy should not remain vacant during the crucial initial months of the Department, and the interim designations should be given to persons having the requisite expertise who

---

[10]Another rationale for the *de facto* officer rule is that a person should not be able to submit his case to an officer and accept it if it is favorable to him, but challenge the officer's authority if the latter should rule against him. *Glidden Company* v. *Zdanok,* 370 U.S. 530, 534 (1962).

411

could serve on a full-time basis. For these reasons, we are unable to read into § 902 the consequences suggested by the Office of the Comptroller General.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*