### FAIN v. AMERICAN SURETY CO. OF NEW YORK et al.

#### No. 10876.

United States Court of Appeals,
Sixth Circuit.

Dec. 8, 1949.

George F. Dugger, Elizabethton, Tenn., Dugger & Dugger, Elizabethton, Tenn., J. D. Baumgardner, Bristol, Tenn., George N.

Barnes, Johnson City, Tenn., John W. Kilgo, Greeneville, Tenn., on brief, for appellant.

S. Bruce Jones, Bristol, Va., J. K. Brown, Bristol, Tenn., Leonard R. Hall, Bristol, Va., on brief, for appellees.

Before HICKS, Chief Judge and MARTIN and MILLER, Circuit Judges.

HICKS, Chief Judge.

On Dec. 9, 1940, appellant, Grace Fain, filed her petition under Sec. 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, in which she averred that she was the owner and operator of a farm; that she was insolvent and that she desired to effect a composition or extension of time in which to pay her debts. She filed a schedule marked A-2 containing a statement of creditors holding securities, without naming them. It does not appear from the record that she disclosed any unsecured creditors. She filed another schedule marked B-1 containing an inventory of her property including her farm and an additional ¾ of an acre.

On Dec. 10, 1940 the district judge referred the matter to J. N. Dunivin, Conciliation Commissioner. On Jan. 2, 1941 Dunivin appointed appraisers to appraise the property of the debtor. At a meeting of creditors on Jan. 18, 1941, the debtor presented her composition proposal which was neither accepted nor rejected. No action was ever taken by creditors upon the plan. Having failed to obtain an acceptance of her composition proposal the debtor petitioned to be adjudged a bankrupt as provided by Sec. 75, sub. s of the Act. The appraisers unduly delayed action. Their report is undated but the record discloses that it was not filed until some time between Dec. 27, 1941 and Jan. 3, 1942.

No exception or objection to the appraisal was ever taken by either the debtor or creditors, although the statute, Sec. 75, sub. s, provided that this might be done.

On Jan. 3, 1942, Commissioner Dunivin considered the report of the appraisers and by order fixed the amount of the rental to be paid by the debtor for the use of the property, real and personal, at the sum of $240.00 annually.

On the same day the commissioner stayed all proceedings for three years. No further steps were taken during the three year period, with the exception that the debtor petitioned the commissioner for allowance for repairs on the dwelling house and barn located on the farm. The stay expired on Jan. 3, 1945 and thereupon the debtor petitioned for her discharge and paid into court $6,813.25, the appraised value of her property, which value had been approved by the commissioner, and thereupon the commissioner ordered and decreed that the debtor be vested with the title and possession of the property free and clear of all incumbrances existing or owing by her at the time of the filing of her original petition.

Appellees Tate and Bacon never sought a review of this order but on Jan. 13, 1945 appellee Surety Company moved to set it aside and further moved the court to order the commissioner to direct a sale of the real estate in accordance with its petition filed on Jan. 4, 1945.

On Jan. 5, 1945 appellee Bacon filed a request for the sale of one acre of land, the title to and possession of which had been vested in the debtor by order of the commissioner on Jan. 3, 1945, and upon which Bacon claimed to have a deed of trust to secure an indebtedness to him of $600.00; and appellee Tate, claiming to be a secured creditor, filed a request for the sale of the same real estate sought to be sold by the Surety Company, but Tate did not set out the amount of his claim or the nature of his security.

On Jan. 13, 1945, the commissioner, acting as referee, Cl. 4, sub-sec. s, Sec. 75, denied all three applications upon the ground that the court had entered the order of Jan. 3, 1945 vesting title and possession of the property in the debtor upon her showing that she had redeemed the same for the amount of its appraised value.

Tate and Bacon pursued the matter no further but the Surety Company filed its petition for a review.

On Feb. 10, 1945 Referee Dunivin certified to the district judge the questions presented and accompanied his certificate with the record of all the proceedings.

On Feb. 26th the debtor moved the court to dismiss the petition for review upon two grounds,—(1) because the petitioner Surety Company had filed no claim showing that it was a creditor of the debtor or the holder of any lien upon her property; and (2) because the debtor's right to redeem the farm at its appraised value was superior and paramount to the right of a secured creditor to demand a public sale thereof.

In the course of unduly delayed proceedings it was disclosed that the term of office of Commissioner Dunivin had expired in February 1944 and on Sept. 13, 1946, the judge decreed that all orders of Commissioner Dunivin, after the expiration of his term, were void and thereupon referred the case and all proceedings thereunder to Frank Berry, another conciliation commissioner.

Nothing further was done until March 24, 1947, when appellees, representing themselves as secured creditors, filed a request pursuant to Sec. 75, sub. s(3) of the Act that the court cause a re-appraisal of the debtor's property and set a date for hearing and after such hearing fix its value, or, in the alternative, order the property upon which the creditors had a lien, to be sold at public auction.

On April 21, 1947, the debtor answered this application and objected to it upon the ground that the applicants had waived the second appraisal and upon the further ground that Commissioner Dunivin had approved and ratified the sale of the property to the debtor at its appraised value, by proper order in 1945. Her answer further averred that Commissioner Dunivin, upon the date of said order, was at least a de facto commissioner and that his acts were entitled to full faith and credit.

On July 8, 1947, Commissioner Berry, acting as referee, ordered a re-appraisal of the property, from which action the debtor sought a review upon two grounds,—(1) that none of the creditors seeking a re-appraisal had filed claims within the period prescribed by the Act and therefore had no legal standing before the court; and (2) because the order of Dunivin turning the property back to the debtor was final and vested title in the debtor. The matter was thereupon certified to the judge.

■ These petitions to review, one by the Surety Company, and the other by the debtor, were considered by the court in a memorandum filed Nov. 10, 1948, and disposed of in an order. In both the memorandum and the order the court indicated a change of view as to the validity of the acts and orders of Commissioner Dunivin after the expiration of his term of office. The court concluded that his acts and orders as a de facto commissioner, except such as were contrary to the provisions of the Act, were valid. This is undoubtedly true. United States v. Royer, 268 U.S. 394, 45 S.Ct. 519, 69 L.Ed. 1011; County of Ralls v. Douglass, 105 U.S. 728, 26 L.Ed. 957; Rockingham Co. v. Luten Bridge Co., 4 Cir., 35 F.2d 301, 66 A.L.R. 735.; Troy Ice & Bev. Co. v. United States, 7 Cir., 15 F.2d 609.

The court confirmed the order of Commissioner Dunivin made on Jan. 13, 1945, denying the applications for a public sale of the property but not upon the ground indicated by the commissioner. The court held in substance that a sale of the property at that time could not be justified under the second proviso of Sec. 75, sub. s(3) of the Bankruptcy Act but that procedure by secured creditors should have been a request for a re-appraisal of the property under the first proviso of Sec. 75, sub. s(3) and the court thereupon sustained the order of Commissioner or Referee Berry allowing a re-appraisal, and referred the case to Berry. Hence this appeal by the debtor.

As a basis for her appeal, the debtor insists (1) that the creditors seeking a re-appraisal are not parties to the proceeding and have no legal standing because they have never filed claims as secured creditors; and (2) because the record shows that they have waived any right to a re-appraisal.

Thus, out of the confused and unsatisfactory condition of the record, rise the questions to be determined.

The court found that no claims were ever filed by appellees. Under Sec. 75, sub. n

of the Act it is specifically provided as follows:

"In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the courts, the title, powers and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed * * *."

Sec. 57, 11 U.S.C.A. § 93, provides in detail for the proof and allowance of claims. A creditor must file a statement under oath setting forth his claim, his consideration therefor, whether any, and if so, what securities are held therefor, and whether any, and if so what payments have been made thereon; and that the claim is justly owing from the bankrupt to the creditor. Sub-sec. b further provides that when a claim is founded upon an instrument in writing, the instrument, unless lost or destroyed, shall be filed with the proof of claim. Sub-sec. c provides that after claims have been proved they may be filed by the claimants in court or before the referee if the case has been referred for the purpose of allowance. Sub-sec. f provides that objections to claims shall be heard and determined as soon as the convenience of the court and the best interests of the estate and the claimant will permit. Sub-sec. n provides "except as otherwise provided in this Act, all claims provable under this Act * * * shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed."

It is clear enough that appellees representing themselves as secured creditors wholly failed to comply with the provisions of the statute and we think for this reason, if nothing more, they were without standing as parties to this litigation. The court took a contrary view. It thought that secured creditors had been represented by their attorneys from the beginning of proceedings; that no objection had been raised to their standing until several years

after their first appearance, and that they had a right to defend their interests and were under no compulsion to file claims as a pre-requisite to their intervention.

The record discloses that neither of the three appellees appeared in court in their capacity as secured creditors until Jan. 5, 1945, when they sought a sale, and not even then did either of them under oath set forth the amount of their claim and the nature of their security except that appellee Bacon did make an unverified statement that his claim for $600.00 was secured by a deed of trust upon one acre of land.

The record further discloses that as early as February 26, 1945, the debtor was protesting that the Surety Company had filed no claim that it was a creditor or holder of any lien against her property.

We cannot accept the view that appellees were under no compulsion to file claims in order to ask for a reappraisal. The court based its conclusions especially upon Courtney v. Fidelity Trust Co., 6 Cir., 219 F. 57, 63, and Ward v. First National Bank of Ironton, 6 Cir., 202 F. 609, 612. It is true that in each of these cases the court held that a creditor holding security is not required to file proof of his claim against a bankrupt estate but may otherwise enforce his security. However, in these cases the secured creditors relied solely on their security and did not seek to participate in the proceedings as creditors. In the present case, the appellees sought to participate as creditors by asking for a re-appraisal. Compare Rafert v. Federal Farm Mortgage Corp., 8 Cir., 152 F.2d 193, 195. Such participation required proof of claim.

If we could assume, which we do not, that appellees were not required to prove and file their claims, there yet exists another substantial reason for reversal. The Bankruptcy Act is specifically vested with equitable jurisdiction, and an age-old maxim, quilibet potest renunciare juri pro se introducto (any one can waive a law made for his benefit) finds application here.

When appellees in January, 1945 filed their request for a sale of the debtor's property under the second proviso of Sec.

75, sub. s(3) they knew that in virtue of the holding in Wright v. Union Central Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184, they had a right to request re-appraisal under the first proviso of clause 3 of Sec. 75, sub. s. They made no effort to act on this provision until March 24, 1947, or for a period of more than two years and two months. In the meantime the debtor was in possession of and operating the farm and claiming title thereto under the order and decree of commissioner or referee Dunivin. Upon these facts we are of the opinion that appellees waived their right to re-appraisal and this does not seem to be a strained conclusion. We must keep in mind that Sec. 75 and especially Sub-sec. s was designed for the protection of the debtor's home and farm.

The order appealed from is reversed and the case remanded for further proceedings and administration. This course may not result in any great monetary loss to appellees for the court may yet allow them to prove and file their claims and to have them liquidated as far as they may after all claims duly filed and allowed have been paid. B. A. Sec. 57, sub. n.