**In the Matter of William Hamilton MERRITT, Debtor.**

**William Hamilton MERRITT, Plaintiff,**

**v.**

**WHIRLPOOL EMPLOYEES FEDERAL CREDIT UNION, a corporation, Defendant.**

**Bankruptcy No. HK 78 00554 B 8.**

United States Bankruptcy Court, W. D. Michigan.

March 25, 1980.

See also, Bkrtcy., 1 B.R. 113.

Berrien County Legal Services Bureau, Inc., Edward M. Yampolsky, St. Joseph, Mich., for plaintiff.

Walsh & Miller, P. C., Richard C. Walsh, Kalamazoo, Mich., for defendant.

## OPINION OF THE COURT

LAURENCE E. HOWARD, Bankruptcy Judge.

The plaintiff-debtor filed a complaint requesting that the court enter an order discharging the defendant's lien on the debtor's 1975 AMC Station-Wagon.

The facts are not in dispute. On May 22, 1978, the debtor filed a petition and plan under Chapter XIII, which provided that the secured creditors, including the defendant, be paid 100% of their debt to the extent of their security and the balance as an unsecured debt. Unsecured creditors were to be paid 25% of their claims. The schedules placed a value of $1,975.00 on the vehicle. The plan was approved and confirmed by the court.

After confirmation, an order for the determination and valuation of secured claims was entered which provided, in part:

"IT IS FURTHER ORDERED that any claims filed after the conclusion of the first meeting of creditors, including the alleged secured claim of Whirlpool Employees Federal Credit Union, shall be allowed only as unsecured claims in this Chapter 13 proceeding."

Subsequent to the first meeting of creditors, the debtor filed an unsecured claim on behalf of the defendant in the amount of $1,263.54 in accordance with Bankruptcy Rule 13-303. The court served notice on the defendant of the filing. The defendant has not filed a claim nor accepted the plan.

Only a small amount remains unpaid under the plan. After this is paid, the defendant and other "unsecured" creditors will have received 25% of their filed claims. No determination was ever made by the court as to the value of the vehicle. It is agreed that the defendant has a valid, perfected lien.

The plaintiff requests that upon completion of the plan and entry of the discharge, that the court enter an order discharging the lien.

■ Generally, it is not necessary for a secured creditor to file a claim in a bankruptcy proceeding under the 1898 Bankruptcy Act to preserve a lien, *Clem v. Johnson*, 185 F.2d 1011 (8th Cir., 1950), certiorari denied, 341 U.S. 909, 71 S.Ct. 622, 95 L.Ed.

1346, *De Laney v. City and County of Denver*, 185 F.2d 246 (10th Cir., 1950) and *Fain v. American Surety Co.*, 178 F.2d 100 (6th Cir., 1949).

Section 641 of the Act (11 U.S.C. § 1041) provides, in part:

"Where not inconsistent with the provisions of this chapter, the rights, duties, and liabilities of creditors and of all other persons with respect to the property of the debtor shall be the same, * * * where a petition is filed under Section 1022 of this title, as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered at the time the petition under this chapter was filed."

The Bankruptcy Rules contain special provisions concerning the filing of a secured claim in Chapter XIII proceedings:

"(e) Time for filing.

(1) Secured Claims. A secured claim, whether or not listed in the Chapter XIII Statement, must be filed before the conclusion of the first meeting of creditors in the Chapter XIII case unless the court, on application before the expiration of that time and for cause shown, shall grant a reasonable, fixed extension of time. Any claim not properly filed by the creditor within such time shall not be treated as a secured claim for purposes of voting and distribution in the Chapter XIII case. . ."
Bankruptcy Court Rule 13–302.

In commenting on the effect of the above cited rule, the Collier's treatise on bankruptcy states:

". . . As pointed out in the Advisory Committee's Notes to the rule and to Official Form 13–9, this latter provision relates only to the treatment of the claim *as a secured claim* and *in the Chapter XIII case*. Failure of a secured creditor to file his secured claim within the time allowed by subdivision (e)(1) will not prevent his later proof of the claim as an unsecured claim within the longer time allowed by subdivision (e)(2), nor would such failure prejudice his status as a secured creditor in the event the case was later dismissed or converted to bankruptcy pursuant to Rule 13–112 or Rule 13–215." *Collier on Bankruptcy*, 14th Ed., Vol. 15, P. 3–302–16.

■ ' If the defendant had timely filed its secured claim, accepted the plan, received the value of its security as determined by the court, and the remainder of its claim as an unsecured creditor under the plan, I believe the lien would be discharged, as fully paid, upon completion of the plan. However, that is not the situation here. The defendant did nothing except accept payments of 25% of its claim from the trustee. Rule 13–302(e)(1) does not provide for the cancellation of a security interest.

It was not necessary to include a secured claim in a Chapter XIII plan under the 1898 Act, Sec. 646(2), 11 U.S.C. Sec. 1046. However, in order to bind secured creditors to the provisions of the plan, it must be "accepted in writing . . . by the secured creditors whose claims are dealt with by the plan." Sec. 652(1), 11 U.S.C. § 1052.

As stated in Collier on Bankruptcy:

"Section 646(2) permits a plan to 'include provisions dealing with secured debts severally, upon any terms.' The word 'debts' is defined to include all claims, and the word 'claims' is defined to include secured claims, except claims secured by estates in real property or chattels real. A plan therefore cannot deal with debts secured by estates in real property or by chattels real, but can deal with debts otherwise secured. . . . The plan must be accepted by every secured creditors who is dealt with by the plan." *Collier on Bankruptcy*, 14th Ed., Vol. 10, P. 273–274.

In *Interstate Finance Corporation v. Scrogham*, 265 F.2d 889 (6th Cir., 1959), the debtor in a Chapter XIII listed the secured creditor as unsecured in his schedules. The court held that the creditor did not lose its secured status by failing to file a proof of claim at the meeting of creditors.

"It is conceded by counsel on both sides that if a secured creditor does not consent to a proposed plan, it cannot be put into effect. Sec. 1052, Title 11 U.S.Code."

.     .     .     .     .

". . . As a matter of fact, the lawyer could probably have sat passively by and done nothing since the statute (Sec. 1052, supra) provides that the application for confirmation cannot be filed until 'it has been accepted in writing' by the secured creditors." (p. 891).

.     .     .     .     .

". . . We hold, therefore, that the appellant was not required to file a proof of claim in order to protect its security. For the reasons stated, we conclude that the order of confirmation was improperly granted. . . ." (p. 892)

It seems abundantly clear that the defendant has not lost its secured status in this case. It was not required to file any claim, secured or unsecured, and it is not bound by a confirmed plan that it did not accept in writing.

It should be pointed out that under the Bankruptcy Reform Act of 1978, unlike the 1898 Act, a secured creditor can be forced to abide by a plan if certain protections are accorded. Sec. 1325(a)(5), 11 U.S.C. Sec. 1325. This section is commonly called the cram-down provision.

The debtor contends that the defendant by not filing its claim and accepting payments under the plan has waived its secured status.

In *United States National Bank v. Chase National Bank*, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320 (1946), the United States Supreme Court addressed this issue:

". . . It is generally true that participation by a secured creditor in distributions from the general assets on the basis of his full claim indicates a waiver of the security and an election to be treated as an unsecured creditor. See *In re O'Gara Coal Co.*, 7 Cir., 12 F.2d 426. But that is not an invariable result flowing from the application of any rigid statutory rule. The result depends, rather, upon the circumstances surrounding the receipt of the dividends. And in exceptional cases, those circumstances may demonstrate the continued vitality of the security as well as indicate that it would be inequitable to declare the security forfeited.

.     .     .     .     .

". . . A waiver may be inequitable or unfair to the secured creditor; *the receipt of dividends may not have caused permanent injury to the unsecured creditors; the dividends may have been received under a mistake of law or fact or pursuant to court approval*; the objecting party may be estopped from questioning the validity of the liens. Such equitable considerations may well be decisive of a waiver or forfeiture in a particular case." (pp. 35–36, 67 S.Ct. p. 1045) (Emphasis Supplied).

.     .     .     .     .

". . . There is thus absent any element of an intentional waiver of the liens or any action inconsistent with a desire to retain the liens in the circumstances surrounding the receipt of the dividends by the judgment lien creditors. . . ." (p. 37, 67 S.Ct. p. 1046)

.     .     .     .     .

"We conclude from these various considerations that the liens should be held to be valid and in existence despite the failure to follow the provisions of § 57(h) and despite the distribution of dividends contrary to § 65(a). There was never any intention to waive the security and those who might have objected to the distributions are now estopped." (p. 39, 67 S.Ct. p. 1047).

█ The only thing the defendant has done here is passively accept 25% of its claim. In my opinion, it has done nothing which would indicate an intention to waive its security.

Finally, mention should be made of the effect of the discharge to be entered:

". . . The discharge under § 660 releases the debtor from all his debts and liabilities provided for by the plan. That includes all the debtor's unsecured debts, since a plan must deal with unsecured debts generally, and it includes any secured debts dealt with in the plan." *Collier on Bankruptcy*, 14th Ed., Vol. 10, p. 356–357.

Therefore, the security interest of the defendant in the debtor's automobile will not be affected by a discharge in this matter.